## PURCELL v. KEEGAN.

1. MASTER AND SERVANT—PURPOSE OF FAIR LABOR STANDARDS ACT—CONSTRUCTION OF STATUTES.

The fair labor standards act is a remedial measure, its purpose being to eliminate from interstate commerce the evils attendant upon low wages and long hours of service, and it is to be liberally construed to carry out the basic social purpose and declared policy of the congress (29 USC [1958 ed], § 211[c]).

2. SAME—OVERTIME WORK—BURDEN OF PROOF—EMPLOYER'S RECORDS.

An employee who brings an action under the fair labor standards act for unpaid overtime work, together with liquidated damages, has the burden of proving he performed work for which he was not properly compensated, a burden that is discharged by sufficient evidence to show the amount and extent of that work as a just and reasonable inference in view of the employer's statutory obligation to keep proper and accurate records (29 USC [1958 ed], § 211[c]).

REFERENCES FOR POINTS IN HEADNOTES
[1] 31 Am Jur, Labor § 603.
[2–5] 31 Am Jur, Labor §§ 735, 736.
[6] 31 Am Jur, Labor §§ 672–681.
Who is employed in executive capacity within exemptions from minimum wage and maximum hours provisions of fair labor standards act. 40 ALR2d 332.

3. SAME—OVERTIME WORK—EMPLOYER'S RECORDS.

Recovery of damages by an employee in an action under the fair labor standards act for unpaid overtime work may not be precluded for his lack of precise proof, since the employer has the statutory duty to keep proper and accurate records (29 USC [1958 ed], § 211[c]).

4. SAME—OVERTIME WORK—BURDEN OF PROOF—EVIDENCE.

An employee, as plaintiff in an action under the fair labor standards act, who shows he did in fact perform overtime work for which he was not properly compensated and produces sufficient evidence to show the extent and amount of such work as a matter of just and reasonable inference shifts the burden to the employer who has a primary duty, imposed by statute, to keep proper and accurate records, to come forward with evidence of the precise amount of the work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence, and in the absence of such contrary evidence by the employer, it is the duty of the court to enter judgment for the employee for an approximate amount (29 USC [1958 ed], § 211[c]).

5. SAME—OVERTIME WORK—BEST EVIDENCE.

Calendar notations by employee, plaintiff in action under the fair labor standards act, which were both fragmentary and intermittent as to unpaid overtime work he had performed for defendant employer, held, not "best evidence" which the court must prefer to the testimony of the plaintiff (29 USC [1958 ed], § 211[c]).

6. SAME—OVERTIME WORK—EXECUTIVE—EVIDENCE.

Evidence in employee's action against defendant employer for unpaid overtime work under the fair labor standards act held, insufficient to substantiate defendant's contention that plaintiff was an "executive" as such term is defined by regulations issued under the act, hence, he was not exempt from the 40-hour week overtime provision, it being shown that plaintiff devoted more than 90% of his time to production, did not have office work, made no records, had no right to hire or fire employees, and did not sell the company's products (29 USC [1958 ed], § 211[c]; 29 USC [1958 ed] CFR, § 541.1).

Appeal from Ingham; Coash (Louis E.), J. Submitted April 13, 1960. (Docket No. 52, Calendar No. 48,397.) Decided June 6, 1960.

Action by George A. Purcell against Thomas Keegan, doing business as Tobert Company, under the fair labor standards act to secure compensation for overtime work. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Clayton F. Jennings,* for plaintiff.

*Charles F. Cummins,* for defendant.

Smith, J.   This action was brought to recover unpaid compensation for overtime work, an additional equal amount as liquidated damages, and a reasonable attorney's fee, all under section 16 subd (b) of the fair labor standards act of 1938, as amended.[1]

It was the testimony of plaintiff that between November 17, 1955, and December 31, 1955, he averaged 70 hours per week work (some days working 10, 11, or 12 hours) and, upon occasion, "I have worked around the clock." During the period from January 1, 1956, to March 31, 1956, he testified, he worked an average of 70 hours per week; from April 1, 1956, to April 28, 1956, an average of 50 hours per week; from April 29, 1956, to October 15, 1956, 50 hours; and from October 16, 1956, to August 1, 1957, 50 hours. The factors controlling the number of hours worked were stated to be the orders on hand.

The defendant, on his part, stressed the failure of the employee to keep accurate records, or, indeed, any records, except on a calendar on the wall at his home, whereon "for a while" he marked down "a lot" of his time. Defendant argued that certain "time cards," showing no overtime, as well as other evidence, impeached plaintiff's testimony. The trial court's holding on this branch of the case was that: "There is no question in my mind but what the plain-

[1] 29 USC (1958 ed), § 216.

tiff has worked overtime." It held, however, that there was "no definite proof" as to any hours, and that the "best evidence" would be the calendar sheets mentioned.

The fair labor standards act, as we have so often been told, is a remedial measure.[2] Its purpose was to eliminate from interstate commerce the evils attendant upon low wages and long hours of service and it is to be liberally construed to carry out the basic social purpose and the declared policy of the congress.[3] In implementation of its purpose it requires of employers the following:[4]

"Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder."

With this requirement of the act the defendant did not comply. And, as we have seen, plaintiff himself has no written records worthy of the name though he testified clearly from memory, as hereinabove set out. Because the plaintiff has failed to produce written records (which the act required defendant himself to keep), defendant argues that plaintiff has not met his burden of proof. In short, defendant seeks to take advantage of his own neglect to defeat the plaintiff's statutory cause of action.

---

[2] *Anderson* v. *Mt. Clemens Pottery Co.*, 328 US 680, 687 (66 S Ct 1187, 90 L ed 1515).

[3] *McComb* v. *Farmers Reservoir & Irrigation Co.* (CCA 10), 167 F2d 911, affirmed 337 US 755 (69 S Ct 1274, 93 L ed 1672).

[4] 29 USC (1958 ed), § 211(c).

The trial court held that there had been a failure of proof. There was no doubt, it was ruled, that plaintiff had in fact worked overtime. But, it was further held, the proof thereof was not definite enough for recovery.

In this the learned circuit judge misconstrued the law. The situation involving the claimant's failure to keep records has been repeatedly before the Federal courts, the best known of the cases being *Anderson* v. *Mt. Clemens Pottery Co.*, 328 US 680, 686, 687 (66 S Ct 1187, 90 L ed 1515), wherein it was held:

"But we believe that the circuit court of appeals, as well as the master, imposed upon the employees an improper standard of proof, a standard that has the practical effect of impairing many of the benefits of the fair labor standards act. An employee who brings suit under section 16(b) of the act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under section 11(c) of the act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof.

"When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or

inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the fair labor standards act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."

The trial court spoke, also, of "speculation" and "guess" as to the amount of overtime. But where injury to some degree is found, we do not preclude recovery for lack of precise proof. We do the best we can with what we have. We do not, "in the assessment of damages, require a mathematical precision in situations of injury where, from the very nature of the circumstances, precision is unattainable."[5] Particularly is this true where it is defendant's own act or neglect that has caused the imprecision. When the employee shows, as he did here, "that he did in fact perform overtime work for which he was not properly compensated and produces sufficient evidence to show the extent and amount of such work as a matter of just and reasonable inference, the burden shifts to the employer to come forward with evidence of the precise amount of the work performed or with evidence to negate the reasonableness of the inference to be drawn from the evidence of the employee. And if the employer fails

---

5 *Stimac* v. *Wissman*, 342 Mich 20, 28.

to produce such evidence, it is the duty of the court to enter judgment for the employee, even though the amount be only a reasonable approximation." *Mitchell* v. *Caldwell,* 249 F2d 10, 11. We note in passing that in the *Mitchell Case,* as well as the case before us, the lower court's judgment was based upon the failure of the employee to keep written records of his overtime.

The finding, moreover, that the plaintiff had kept adequate records (the notations on the calendar mentioned above) is not borne out by the record. The only testimony on the point was that the calendar notations were both fragmentary and intermittent. Such showings do not rise to the dignity of the "most natural" and "satisfactory" proof of the facts under inquiry, and the best evidence rule has no application. The calendar, in this case, would not be the "best evidence," which the court must prefer to the testimony of the plaintiff.[6]

Defendant urges in this Court, also, an affirmative defense, namely, that plaintiff was employed in an executive capacity, and thus exempt from the 40-hour week overtime provision.[7]

The difficulty with this position is that the regulations issued under the exemption provision defined the term "employee employed in a bona fide executive * * * capacity" to mean any employee:[8]

"(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

"(b) Who customarily and regularly directs the work of 2 or more other employees therein; and

"(c) Who has the authority to hire or fire other employees or whose suggestions and recommenda-

[6] See, in this regard, 4 Wigmore, Evidence (3d ed), §§ 1173–1175.
[7] See 29 USC (1958 ed), § 213.
[8] 14 Fed Reg 7705, as amended, Nov. 18, 1958, 29 CFR § 541.1, 29 USC (1958 ed), CFR, § 541.1.

tions as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

"(d) Who customarily and regularly exercises discretionary powers; and

"(e) Who does not devote more than 20% of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: * * *; and

"(f) Who is compensated for his services on a salary basis at a rate of not less than $55 per week."

Far, however, from not devoting more than 20% of his working hours to nonexecutive duties, outlined in paragraphs (a) through (d) above, it was plaintiff's testimony that he devoted more than 90% of his time to production. Such testimony was nowhere reasonably refuted. He testified, moreover, that he did no office work, though he assisted in the pricing, made no records, had no right to hire or fire, and did not sell the company's products. The trial court, while not basing its decision thereon, found that plaintiff "practically ran the shop," but even if the testimony supports such a finding the plaintiff would still not qualify by exemption as one employed in an executive capacity, under the regulations issued by the administrator of the wage and hour division, department of labor.

Reversed and remanded for further proceedings not inconsistent herewith. Costs to appellant.

Dethmers, C. J., and Carr, Kelly, Black, Edwards, Kavanagh, and Souris, JJ., concurred.