MANTUA v AUTO CLUB INSURANCE ASSOCIATION

Docket No. 155418. Submitted March 10, 1994, at Detroit. Decided July 18, 1994, at 9:35 A.M. Leave to appeal sought.

Robert Mantua and others brought an action in the Wayne Circuit Court against Auto Club Insurance Association, seeking reformation of a contract of automobile insurance. Plaintiffs alleged that mutual mistake had resulted in coordinated medical coverage for one of the plaintiffs' business vehicles, representing a departure from plaintiff Robert Mantua and the defendant's agreement and practice of insuring the plaintiffs' business vehicles for full medical coverage and the plaintiffs' personal vehicles for coordinated medical coverage. The court, James Chylinski, J., granted summary disposition for the defendant. The plaintiffs appealed.

The Court of Appeals *held:*

1. The court erred in granting summary disposition, given that genuine issues of material fact existed concerning whether plaintiff Robert Mantua and the defendant, through an agent, had agreed that all business vehicles would receive full medical coverage and whether the vehicle in question was insured properly in accordance with the agreement.

2. Plaintiff Robert Mantua's failure to read the policy declaration of coverage for the vehicle in question does not estop the plaintiffs from seeking reformation of the insurance contract.

Reversed and remanded for further proceedings.

CONTRACTS — INSURANCE — REFORMATION.

The failure of an insured to read the terms of an insurance contract does not prevent reformation of the contract on the basis of mutual mistake.

*Mindell, Panzer, Mulcahy & Malin* (by *Michael T. Ratton*), for the plaintiffs.

REFERENCES

Am Jur 2d, Insurance §§ 370, 371.

Negligence in executing contract as affecting right to have it reformed. 81 ALR 2d 7.

*Brandt, Hanlon, Becker, Lanctot, McCutcheon, Schoolmaster & Taylor* (by *Elaine I. Harding*) (*John A. Lydick,* of Counsel), for the defendant.

Before: White, P.J., and Michael J. Kelly and W. J. Caprathe,* JJ.

Per Curiam. Plaintiffs appeal as of right from a circuit court order granting summary disposition to defendant pursuant to MCR 2.116(C)(10), thereby dismissing plaintiffs' action seeking reformation of an automobile insurance contract to provide full medical coverage rather than the coordinated medical coverage provided by defendant insurer. We reverse and remand.

I

Plaintiffs Robert and Mary Mantua owned several vehicles. Some of the vehicles were for personal use, others were designated "work vehicles" and used in the course of conducting a family business, Architectural Exteriors. In 1984, the Mantuas obtained insurance for all their vehicles through Michael Ortkras, defendant Auto Club Insurance Association's agent. Until 1988, the Mantuas contracted for coordinated benefits coverage for all their vehicles.

In April 1988, Ortkras met with Robert Mantua and rewrote the coverage on the Mantuas' vehicles. According to Mantua, the discussion included an agreement that all business vehicles would thereafter carry full medical coverage. Ortkras could not remember whether such an agreement had been made at that time, but acknowledged that his records indicated that from that time, some vehicles had full medical coverage rather

---

* Circuit judge, sitting on the Court of Appeals by assignment.

than coordinated benefits coverage, and all vehicles with full medical coverage were used by a business driver or in a business capacity.

All subsequent changes to the policy resulted from phone calls made by Robert Mantua notifying Ortkras' office as vehicles were changed or added to the fleet. Ortkras or members of his staff would then delete vehicles from the policy, or add them after ascertaining title ownership, principal driver, financing, and intended use.

Effective August 17, 1989, a 1989 Geo Tracker, titled in the name of Architectural Exteriors, was added to the policy. According to Ortkras' records, Mary Mantua was the named insured and principal driver, and the vehicle's indicated use was as a pleasure, rather than a business, vehicle. Neither Robert Mantua nor Ortkras could later recall the specifics of the telephone conversation initiating the change. Robert Mantua testified that, while he could not recall the specifics of the conversation, when adding a vehicle he always told Ortkras who owned it and he would also have told him that the Tracker was to be used for company purposes. Plaintiffs concede, however, that the policy, which they did not review, thereafter listed the Tracker as a pleasure vehicle receiving coordinated benefits coverage.

On April 21, 1990, while on a nonbusiness-related trip, the Tracker was involved in a collision. Robert Mantua was driving; Mary Mantua and James Berry were passengers. All were seriously injured. Defendant paid coordinated benefits coverage, but refused to pay full medical coverage. Plaintiffs brought this action for full benefits. They claimed that because the Tracker was owned by Architectural Exteriors, with Mary DeAngelis (Mantua), an employee, designated the named insured and primary driver, it was therefore a work

vehicle, for which full medical coverage had been intended. Defendant, relying on the written contract terms, moved for summary disposition.

In response, plaintiffs argued that defendant's own records, which, with only two exceptions, appeared to correlate title ownership in the business with full medical coverage, confirmed the existence of an agreement to confer such coverage on business vehicles. Plaintiffs also argue that defendant's records indicate it was mistaken with respect to the ownership of those two vehicles, and that if the insurance coverage on those vehicles is viewed in light of defendant's belief concerning their ownership, there is even greater support for plaintiffs' assertions regarding the existence and terms of the agreement regarding coverage. Relying on the correlation between business vehicles and full coverage, and on Ortkras' deposition admissions that the two exceptions could have been mistakes, plaintiffs argued that title ownership in the business determined that a vehicle was a business vehicle, and was intended to have full medical coverage.

The trial court granted defendant's motion, ruling that despite evidence of

> at least some understanding that the general proposition was that business vehicles had full medical coverage and individual vehicles had coordinated benefits to save some money

plaintiffs had failed to establish

> a continuing agreement between the parties at an earlier time, that if certain vehicles came in, they were automatically listed certain ways.

The court also stated that because Ortkras' information would have been supplied by Robert Man-

tua, and neither he nor Ortkras remembered the specifics of the conversation involving the Tracker, there was insufficient evidence of mistake.

II

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a plaintiff's claim. The trial court must give the benefit of any reasonable doubt to the nonmoving party, and must then determine whether a record might be developed that would leave open an issue on which reasonable minds might differ. *Coleman-Nichols v Tixon Corp,* 203 Mich App 645, 650; 513 NW2d 441 (1994).

Here, two questions of material fact were raised: (1) whether Robert Mantua and defendant affirmatively agreed in April 1988 that thenceforth all business vehicles would receive full medical coverage, and (2) whether the vehicle was properly insured in accordance with the agreement. Viewed in the light most favorable to plaintiffs, Robert Mantua's deposition testimony concerning the 1988 meeting, his practice with respect to obtaining coverage for new vehicles, the record evidence of an ongoing correlation between business ownership and full medical coverage, and Ortkras' concession that deviations from that correlation could have been mistakes were sufficient to establish genuine issues of material fact regarding these questions.

Moreover, the fact that Ortkras' information about the Tracker could only have come from Robert Mantua does not indisputably establish that the vehicle's designation as a pleasure vehicle arose from Mantua's unilateral mistake. Mantua understood the terms of his agreement with defendant to mean that a vehicle titled in the name of

his business and driven by an employee would qualify for full coverage. However, Ortkras' testimony that he did not realize that Mary Mantua was an employee leaves open the possibility that he or another staff member determined the Tracker to be a personal rather than a business vehicle on the basis of Mary Mantua's designation as the principal driver.

### III

Defendant argues that plaintiffs are estopped from maintaining this action under *Drogula v Federal Life Ins Co,* 248 Mich 645; 227 NW 692 (1929). We disagree. The holding in *Drogula* did not rest merely on the plaintiff's failure to read the printed conditions of his policy, but on the policy's express limitation on the power of the agent. The policy stated, "No agent has authority to change this policy or to waive any of its provisions."[1] *Id.* at 649. The Court emphasized that such a provision, whether read by the insured or not, precluded any change in the conditions of the policy, either by parol or writing. *Id.* Under such circumstances, the plaintiff policyholder was

> estopped, by accepting the policy, from setting up or relying upon powers in the agent in opposition to limitations and restrictions in the policy. [*Id.* at 649-650, quoting *Cleaver v Ins Co,* 65 Mich 527, 533; 32 NW 660 (1887).]

Moreover, although the circuit court in this case did not address whether plaintiff Robert Mantua

---

[1] Defendant has not asserted that its policy contains a similar provision. Even if such a provision is found in the policy, *Drogula* does not hold that the failure to read a policy precludes reformation where the policy was intended to provide one form of coverage but through a mutual mistake a different form of coverage was provided in its stead.

had been negligent in failing to read the terms of his contract and did not decide the case on estoppel grounds, a mere failure to read a policy does not prevent reformation of a contract based on mutual mistake. *Whitney v Nat'l Fire Ins Co,* 296 Mich 38, 43; 295 NW 551 (1941); *Heath Delivery Service v Michigan Mutual Liability Co,* 257 Mich 482, 486; 241 NW 191 (1932).

Here, the issue is not whether Robert Mantua's purported agreement with defendant was void by the contract's very terms, but whether he is entitled to reformation of the contract on the basis of its alleged inaccuracy in representing the agreement made between the parties.

Reversed and remanded for further proceedings. We do not retain jurisdiction.