BERRIOS v MILES, INC

Docket No. 195551. Submitted August 5, 1997, at Detroit. Decided November 21, 1997, at 9:05 A.M.

Luis Berrios, II, a hemophiliac, brought an action in the Oakland Circuit Court against Miles, Inc., seeking damages for health problems allegedly caused by his being infected with the human immunodeficiency virus (HIV) as a result of using a blood factor manufactured by the defendant. In June 1985, the plaintiff, then fourteen years old, learned that he was infected with HIV and that the defendant's product was the likely source of his infection. The plaintiff turned eighteen years old on December 12, 1988. The plaintiff suffered no health problem associated with his HIV infection until July 1992, when he began to exhibit symptoms of acquired immunodeficiency syndrome (AIDS). Thereafter his health began to deteriorate, and he eventually brought this action on April 26, 1994. The court, Edward Sosnick, J., granted summary disposition for the defendant, finding that the plaintiff's claim accrued in 1985 when he learned that he was infected with HIV, that the appropriate period of limitation was the three-year period for products liability actions found in MCL 600.5805(9); MSA 27A.5805(9), which was extended to the plaintiff's nineteenth birthday by reason of his minority at the time of the accrual of the action, and that, accordingly, the action was time-barred at the time it was brought in 1994. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court properly held that the plaintiff's action accrued in 1985 when he became aware that he was infected with HIV and that the defendant's blood product was the likely source of that infection. Although the plaintiff did not begin to suffer the debilitating symptoms associated with AIDS until seven years after his discovery that he was infected with HIV, once he knew that he was infected with HIV and that the source of that infection was the defendant's product, he was aware of the possible cause of action against the defendant, and, accordingly, his claim against the defendant accrued at that time.

2. The assertion that the plaintiff's cause of action should not accrue upon the discovery of the HIV infection because damages at

that time were speculative is without merit. Although damages based on speculation or conjecture are not recoverable, damages are not speculative merely because they cannot be ascertained with mathematical precision. Here, the plaintiff's deposition testimony establishes that he knew sometime before 1987 that everyone who had an HIV infection would eventually develop AIDS and that his HIV infection had by itself led to various social restrictions, concerns, and consequences. Accordingly, the plaintiff would have been able to plead a proper cause of action for personal injury, including the element of damages, when he learned that he was infected with HIV.

Affirmed.

LIMITATION OF ACTIONS — PRODUCTS LIABILITY — ACCRUAL OF ACTIONS — INFECTIONS — HUMAN IMMUNODEFICIENCY VIRUS.

A products liability action for the consequential injuries resulting from becoming infected with the human immunodeficiency virus as the result of a contaminated product accrues when a plaintiff becomes aware of the infection with that virus and that the likely source of the infection was the contaminated product manufactured by the defendant (MCL 600.5805[9]; MSA 27A.5805[9]).

*Elliott R. Perlman* and *Jeffrey W. Perlman,* for the plaintiff.

*Feikans, Vander Male, Stevens, Bellamy & Gilchrist, P.C.* (by *Jack E. Vander Male* and *Jeffrey Feikens*), for the defendant.

Before: SMOLENSKI, P.J., and FITZGERALD and GAGE, JJ.

GAGE, J. This products liability case presents a single issue: When does a cause of action concerning the contraction of the human immunodeficiency virus (HIV) accrue? This issue is of first impression to our state courts. The circuit court ruled that plaintiff's claim accrued when plaintiff learned that he had tested positive for HIV and that the period of limitation applicable to his claim had therefore expired before plaintiff filed the present lawsuit. Plaintiff appeals as of right the court's subsequent grant of summary dis-

position for defendant on the basis of this finding. We affirm.

The undisputed underlying facts of the case are tragically familiar to those knowledgeable about the history of HIV in this country. Plaintiff, a hemophiliac, was given a blood factor concentrate product manufactured by defendant. In June 1985, when plaintiff was fourteen years old, he learned that he was infected with HIV and that defendant's product was the likely source of his infection. Plaintiff did not experience health problems associated with his HIV infection until approximately July 1, 1992, when he began to exhibit symptoms of acquired immunodeficiency syndrome (AIDS). His health began to deteriorate, and he filed this lawsuit on April 26, 1994.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(7), arguing that plaintiff's claim was barred by the statute of limitations, and MCR 2.116(C)(10). The circuit court concluded that plaintiff's cause of action accrued when he learned of his HIV status in June 1985. Under MCL 600.5805(9); MSA 27A.5805(9),[1] the applicable limitation period for a products liability action was three years, and the limitation period expired in June 1988. However, because plaintiff was under the disability of infancy when his claim accrued, he was allowed, pursuant to MCL 600.5851(1); MSA 27A.5851(1),[2] one year after his

---

[1] MCL 600.5805(9); MSA 27A.5805(9) provides:

   The period of limitations is 3 years for a products liability action. However, in the case of a product which has been in use for not less than 10 years, the plaintiff, in proving a prima facie case, shall be required to do so without benefit of any presumption.

[2] MCL 600.5851(1); MSA 27A.5851(1) provides in pertinent part:

eighteenth birthday within which to file a lawsuit. Plaintiff turned nineteen on December 12, 1989, but he did not file this lawsuit until April 26, 1994. Therefore, concluded the circuit court, plaintiff's suit was time-barred.

Plaintiff now argues that the circuit court erred because in order for a cause of action to accrue, there must be some damages. He contends that he suffered no damages until 1992 when he began to exhibit symptoms of AIDS. Defendant argues, as it did below, that all the elements for a cause of action were present when plaintiff knew that he was infected with HIV, knew the probable source of his infection, and knew that his HIV infection was likely to cause serious injury or death. Therefore, defendant contends, plaintiff's claim accrued in June 1985, and the circuit court did not err. Where the facts are undisputed, " 'the question whether a plaintiff's cause of action is barred by the statute of limitations is a question of law, to be determined by the trial judge.' " *Solowy v Oakwood Hosp Corp*, 454 Mich 214, 230; 561 NW2d 843 (1997), quoting *Moll v Abbott Laboratories*, 444 Mich 1, 26; 506 NW2d 816 (1993). Questions of law are reviewed de novo on appeal. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

To properly plead a cause of action for personal injury, each element of the asserted claim must be

[I]f the person first entitled to make an entry or bring an action under this act is under 18 years of age or insane at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run.

alleged. The complaint, therefore, must allege (1) that the defendant owed a legal duty to the plaintiff, (2) that the defendant breached that duty, (3) that the breach was the proximate cause of the plaintiff's injury, and (4) that the plaintiff suffered damages. *Moll, supra* at 16. In a pharmaceutical products liability case, the date of accrual of a cause of action is governed by the discovery rule. *Id.* at 29. Under the discovery rule, the limitation period begins to run when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered a possible cause of action. *Id.* The *Moll* Court further explained:

> We find that the best balance is struck in the use of the "possible cause of action" standard. This standard advances the Court's concern regarding preservation of a plaintiff's claim when the plaintiff is unaware of an injury or its cause, yet the standard also promotes the Legislature's concern for finality and encouraging a plaintiff to diligently pursue a cause of action. Once a claimant is aware of an injury and its possible cause, the plaintiff is aware of a possible cause of action. [*Id.* at 23-24.]

Although statutes of limitation have not been construed by Michigan courts in connection with a plaintiff testing positive for HIV and the subsequent onset of AIDS symptoms, federal courts and courts in other jurisdictions have analyzed this exact issue.[3] For

---

[3] This exact issue has also been discussed in the legal literature. See, e.g., Colyer, *Wrongful Infection with the HIV Virus: When Should the Clock Start Ticking on the Statute of Limitations?*, 4 Va J Soc Pol'y & L 235 (1996), in which the author concludes that the period of limitation should begin to run when an individual has subjective knowledge of an injury. The subjective knowledge requirement, according to Colyer, can be satisfied by the receipt of an HIV test showing the individual to be infected, receipt of the same information from a medical professional, or advice

example, in *Doe v Cutter Biological*, 813 F Supp 1547 (MD Fla, 1993), aff'd 16 F3d 1231 (CA 11, 1994), the plaintiff, a hemophiliac, used the defendant's blood product and was later informed by the defendant that a donor had been diagnosed with AIDS. *Id.* at 1549-1550. The plaintiff tested positive for HIV in September 1985, and his physician informed him of the test result and that his infection probably occurred from the defendant's blood product in October 1985. *Id.* at 1550-1551. During the subsequent litigation, the defendant argued that the plaintiff was injured when he tested positive for HIV, but the plaintiff argued that the injury was the onset of AIDS, not the discovery of the presence of HIV infection. The court found that the plaintiff's injury occurred when he received the tainted blood product. However, his claim accrued when he learned that he was HIV positive. Florida law required only that a plaintiff "have notice of the possible invasion of his legal rights" for the period of limitation to begin to run. *Id.* at 1555.

The Circuit Court of Appeals for the District of Columbia applied a similar analysis in *Nelson v American Nat'l Red Cross*, 307 US App DC 52; 26 F3d 193 (1994), where the plaintiff's decedent received blood transfusions during emergency surgery in February 1985. The decedent learned that the blood he had received was infected, and he tested positive for HIV in October 1986. At that time, his doctor explained that " 'being HIV positive was in all likelihood associated with progression to AIDS.' " *Id.* at 54. By the spring of 1990, he had developed AIDS, and he died in

---

from a medical professional that the individual has symptoms consistent with HIV infection or AIDS and should be tested for those conditions.

March 1991. *Id.* The decedent did not file a lawsuit before his death. In March 1992, his son filed a lawsuit based on a wrongful death act with a three-year statute of limitations. The district court granted the defendants summary disposition, noting that the decedent's cause of action accrued on the date that he was informed that he tested positive for HIV, not when he later developed AIDS. *Id.* at 55-56. The District of Columbia circuit court affirmed the decision of the district court, noting that a period of limitation begins to run "as soon as the plaintiff discovers his injury through an HIV positive test result." *Id.* "Under the discovery rule, the relevant date is when [the decedent] knew or 'by the exercise of reasonable diligence' should have known of 'some evidence of wrongdoing' by the defendants." *Id.* at 197, quoting *Bussineau v President & Directors of Georgetown College*, 518 A2d 423, 425 (DC, 1986).

In support of his argument, plaintiff in the present case cites an opinion of the Ninth Circuit Court of Appeals, *New v Armour Pharmaceutical Co*, 67 F3d 716 (CA 9, 1995), which entails facts similar to those of plaintiff's case. In *New*, the plaintiff's decedent, a hemophiliac, used the defendant's blood product and became infected with HIV. The decedent tested HIV positive in 1988, but his health did not deteriorate and he did not stop working until January 1992. *Id.* at 717-718. In response to the defendant's statute of limitations defense, the district court ruled that the plaintiff's claim accrued when the decedent tested positive for HIV. *Id.* at 718. The Ninth Circuit Court of Appeals disagreed. It found that although the decedent learned he was HIV positive in 1988, he did not then have AIDS. The court reasoned, on the basis of the

state of scientific knowledge in 1988, that the decedent could not have known with certainty that he would develop AIDS. At that time, only a small percentage of HIV positive hemophiliacs were known to have developed AIDS. *Id.* at 721. Thus, the court concluded that because the information available to the decedent in 1988 and 1989 was that "the odds were substantial that he would not get AIDS," he could not have brought a claim against the defendant at that time. *Id.* at 722. "The statute of limitations started to run only when [the decedent] had reason to believe he had a cause of action against [the defendant] for the infliction of AIDS." *Id.*

While we are sympathetic to plaintiff and similarly situated individuals, we cannot agree with the analysis employed in *New*. First, although we recognize that we are not obligated to follow their rulings in this regard, we are guided by the opinions of the Sixth Circuit Court of Appeals that state that 1984 marks the time that the medical and scientific communities reached a consensus that AIDS could be transmitted by blood, *Spence v Miles Laboratories, Inc*, 37 F3d 1185, 1187 (CA 6, 1994), and that HIV was identified by these communities as the AIDS-causing virus, *McKee v Cutter Laboratories, Inc*, 866 F2d 219, 224 (CA 6, 1989). In the present case, we find that plaintiff was actually injured when he received the blood product that was contaminated with HIV. The general rule in Michigan concerning when a claim accrues, as we have already stated, is the "possible cause of action" standard. *Moll, supra* at 22-23. This means that plaintiff's claim accrued in 1985 when plaintiff was informed that he tested positive for HIV

and thereby discovered his injury.[4] Although plaintiff did not begin to suffer the debilitating symptoms associated with AIDS until seven years after discovering his HIV infection, once he knew both that he was HIV positive and that the likely source of his infection was defendant's blood product, he was aware that he had a "possible cause of action" against defendant, and his claim accrued at that time. The circuit court, therefore, did not err in granting defendant summary disposition based upon the statute of limitations.

Plaintiff argues that this holding is incongruous because his damages were speculative at the time he discovered that he was infected with HIV. A party asserting a claim has the burden of proving its damages with reasonable certainty. *S C Gray, Inc v Ford Motor Co*, 92 Mich App 789, 801; 286 NW2d 34 (1979); *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 108; 535 NW2d 529 (1995). Although damages based on speculation or conjecture are not recoverable, *Sutter v Biggs*, 377 Mich 80, 86; 139 NW2d 684 (1966), damages are not speculative merely because they cannot be ascertained with mathematical precision. *Godwin v Ace Iron & Metal Co*, 376 Mich 360, 368; 137 NW2d 151 (1965); *Hofmann, supra.* It is sufficient if a reasonable basis for computation exists, although the result be only approximate. *McCullagh v Goodyear Tire & Rubber Co*, 342 Mich 244, 255; 69 NW2d 731 (1955); *Hofmann, supra.* " '[W]here injury to some degree is found, we do not preclude recovery for lack of precise proof [of damages]. We do the best

---

[4] The parties do not argue that through reasonable inquiry plaintiff could have discovered his claim before this time. Thus, we do not need to decide whether a claim such as plaintiff's might accrue before he objectively learned that he was HIV positive.

we can with what we have.' " *Hofmann, supra* at 111, quoting *Purcell v Keegan,* 359 Mich 571, 576; 103 NW2d 494 (1960).

Plaintiff's own deposition testimony, which was part of the record when the circuit court entered the order dismissing plaintiff's claim, demonstrates that plaintiff could have established the element of damages at least as early as 1987. Plaintiff testified that his hematologist had informed him before 1987 that everyone who was HIV positive would develop AIDS. Moreover, plaintiff discussed the social restrictions he felt in high school because of his HIV infection and his concerns about transmitting HIV to others through dating or engaging in sexual activity. He further testified that he and his mother did not tell anyone of his HIV infection, including his father and brother, for fear of the consequences. According to plaintiff's deposition testimony, he and his mother discussed filing a lawsuit against defendant as early as 1988 or 1989. Thus, plaintiff's argument that his claim did not accrue until he developed AIDS because he had suffered no damages until that point has no merit. By plaintiff's own testimony, he discovered his injury and suffered damages at a much earlier point when he was merely HIV infected. "The discovery rule applies to the discovery of an injury, not to the discovery of a later realized consequence of that injury." *Moll, supra* at 18. As our Supreme Court explained in *Connelly v Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146, 151; 200 NW2d 70 (1972):

> Once all of the elements of an action for personal injury, including the element of damage, are present, the claim accrues and the statute of limitations begins to run. Later damages may result, but they give rise to no new cause of

> action, nor does the statute of limitations begin to run anew
> as each item of damage is incurred.

We find that plaintiff would have been able to plead a proper cause of action for personal injury, including the element of damages, when he learned that he was HIV positive. We therefore hold that the circuit court did not err in ruling that had plaintiff not been under a disability when his claim accrued in 1985, the period of limitation would have expired in June 1988. However, because of plaintiff's infancy in 1985, his nineteenth birthday on December 12, 1989, was the last date on which plaintiff could have filed a justifiable lawsuit.

In so holding, we note our Supreme Court's public policy analysis in two separate cases. In *Moll, supra,* the plaintiffs alleged latent toxic injuries arising from their mothers' use of diethylstilbestrol (DES), a drug manufactured by the defendants, while pregnant with the plaintiffs. All of the plaintiffs suffered reproductive difficulties or infertility as a result of their mothers' use of the drugs. The plaintiffs all discovered abnormalities of their cervixes or uteruses before learning of their difficulty in conceiving. Our Supreme Court ruled that the plaintiffs discovered their injuries when they learned of the abnormalities and that their causes of action accrued at that time, not later when they discovered their consequent reproductive difficulties. The Court noted:

> In order to promote finality and prevent overburdening of
> our judicial resources, we adhered to the general principle
> that the discovery of an injury commences the running of
> the statute of limitations.

\*     \*     \*

> . . . To hold that the statute of limitations did not begin to run until the plaintiff realized additional consequences of her physical abnormality would circumvent the clear intent of the Legislature to promote prompt resolution of claims. [*Id.* at 19-20.]

Similarly, in *Stephens v Dixon*, 449 Mich 531, 540; 536 NW2d 755 (1995), the Court rejected the plaintiff's argument that in an automobile negligence action, serious impairment of body function was a fifth element of her cause of action. The Court noted that such an addition

> would corrupt the purposes of the statute of limitation. Potential defendants of such suits would be denied the benefit of repose, since the rise of an injury to the threshold level could take many years, even decades. Moreover, the cost in judicial resources would also increase. In order to promote finality and prevent overburdening of our judicial resources, we cleave to the general principle that the discovery of an injury, not its attainment of some threshold status, commences the running of the statute of limitation. [*Id.* at 540-541.]

As a matter of public policy, we find this logic equally applicable to lawsuits such as the present case involving HIV infection and the consequent development of AIDS.

We note that plaintiff also relies on the reasoning of our Supreme Court in *Larson v Johns-Manville Sales Corp*, 427 Mich 301; 399 NW2d 1 (1986), a case that involved plaintiffs who developed lung cancer long after their exposure to asbestos. The *Larson* Court ruled that those plaintiffs who did not file lawsuits within three years of the discovery that they suffered from asbestosis, a condition also caused by asbestos exposure but that is not always fatal and does not

always lead to cancer, could later file suit if they discovered they had lung cancer probably caused by the same exposure. However, the Court emphasized "that the rule we develop in this case for subsequent damages is premised on the unique nature of the asbestos situation and is not applicable in other areas." *Id.* at 319-320. Plaintiff's reliance on *Larson* is, therefore, misplaced.

For all the stated reasons, we affirm the circuit court's order granting summary disposition to defendant.

Affirmed.