# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT MILLER and DIANE MILLER,

        Plaintiffs-Appellants/Cross-
        Appellees,

UNPUBLISHED
August 2, 2016

v

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant-Appellee/Cross-
        Appellant.

No. 325885
Tuscola Circuit Court
LC No. 12-027312-CK

Before: JANSEN, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

In this insurance dispute following a house fire, plaintiffs Robert and Diane Miller appeal as of right the trial court's order directing a verdict in favor of defendant, Farm Bureau General Insurance Company, following the presentation of plaintiffs' proofs at a jury trial. Defendant cross-appeals, challenging the trial court's order granting reformation of the insurance contract to list plaintiff Diane Miller as a named insured under the policy. We reverse and remand for further proceedings.

Plaintiffs first argue that the trial court abused its discretion when it refused to allow plaintiffs to reopen proofs for the purpose of formally admitting the relevant insurance policy into evidence. This issue arose after defendant moved for a directed verdict. During arguments on the motion, the trial court commented that the insurance policy had not been admitted into evidence, which prompted plaintiffs to move to reopen proofs for the purpose of admitting the policy. The trial court ultimately granted defendant's motion for a directed verdict in part because the policy had not been introduced, and summarily stated that it was denying plaintiffs' motion to reopen proofs.

We review a trial court's decision whether to allow a party to reopen proofs for an abuse of discretion. *Bonner v Ames*, 356 Mich 537, 541; 97 NW2d 87 (1959). "The trial court abuses its discretion when its decision results in an outcome that falls outside the range of reasonable and principled outcomes." *Patrick v Shaw*, 275 Mich App 201, 204; 739 NW2d 365 (2007).

We review a trial court's decision to direct a verdict de novo. *Meagher v Wayne State Univ*, 222 Mich App 700, 708; 565 NW2d 401 (1997). "When evaluating a motion for a directed

-1-

verdict, a court must consider the evidence in the light most favorable to the nonmoving party, making all reasonable inferences in favor of the nonmoving party." *Id.* "Directed verdicts are appropriate only when no factual question exists upon which reasonable minds may differ." *Id.*

When evaluating a motion to reopen proofs, a trial court should consider whether the adverse party would be "deceived or prejudiced" by reopening the proofs, and whether there would be inconvenience or surprise to the court, parties, or counsel. *Bonner*, 356 Mich at 541. Other relevant factors include, "whether conditions have changed or undue advantage would result, whether newly discovered and material evidence is sought to be admitted, whether surprise would result, and the timing of the motion during the trial." *People v Moore*, 164 Mich App 378, 383; 417 NW2d 508 (1987), mod in part on other grounds 433 Mich 851 (1989).

The trial court abused its discretion when it refused to allow plaintiffs to reopen proofs to formally admit the insurance contract. In *Bonner*, which involved an automobile-pedestrian accident, the plaintiff moved to reopen proofs to introduce evidence of the distances involved in terms of feet rather than city "blocks." The trial court denied the motion, and then granted the defendant's motion for a directed verdict. Our Supreme Court reversed that decision, stating:

> In thus denying plaintiff's motion to reopen to establish the meaning of 'block' in terms of length in feet the court was in error. We recognize, of course, and have often held, that a motion to reopen proofs is a matter within the discretion of the court. But the discretion must be a sound judicial discretion. Here the case had not proceeded to such a point, nor had conditions so changed, that any undue advantage would be taken by plaintiff. The principles involved were well stated in *Bommer v Stedelin*, [237 SW2d 225, 229 (Mo App)], wherein the court held:
>
>> "There was no showing of surprise to defendants or of inconvenience to the court, parties, counsel, or jury or that the adverse party would have been deceived or prejudiced in any manner by granting the leave. The ruling on the motion for a directed verdict had not yet been made. The court denied plaintiff the opportunity to offer evidence to prove that defendants owned and operated the parking facility, while at the same time directing a verdict against plaintiff for failure to prove such fact. This constituted an abuse of discretion." [*Bonner*, 356 Mich at 541 (footnote omitted).]

The same is true in this case. There was no question of fact in this case whether the policy existed, was valid, and was current. In addition, defense counsel acknowledged in opening statement that the policy covered replacement costs, but limited the initial amount paid to actual cash value, which involved a calculation of depreciation. There would have been no surprise, inconvenience, or prejudice to defendant from the formal introduction of the document, which both parties were relying on throughout the case. There was no principled reason for not allowing plaintiffs to reopen proofs for the limited purpose of admitting the policy. Accordingly, the trial court abused its discretion by denying plaintiffs' request to reopen their proofs for that limited purpose.

Plaintiffs also argue that the trial court erred in directing a verdict in favor of defendant on the ground that plaintiffs failed to present sufficient evidence concerning the damages to their home. We agree.

At trial, plaintiffs presented the voir dire testimony of Ross Poorman, an owner of Michigan Fire Claims, Inc., the firm that plaintiffs' hired to assist them in completing their sworn statement of proof of loss for the damage to the home's structure and Diane's personal property inventory listing items damaged or destroyed by the fire, as foundation for introduction of their inventory. Although offered as a lay witness because of his assistance in the preparation of the documents, Poorman also provided testimony concerning the methodology used in determining the replacement cost value of the structure and the means by which Poorman and his employees calculated depreciation, to arrive at the actual cash value of the home. An employee of the firm, Jason Marx, was permitted to testify about the replacement cost value of the property. However, the trial court denied plaintiffs' request to have Marx also testify about depreciation, on the ground that Marx's testimony about his role in preparing the depreciation amount differed from what Poorman had described. The trial court then found that plaintiffs could not offer any competent testimony concerning depreciation, thus rendering their evidence concerning actual cash value without an adequate foundation, and therefore directed a verdict in favor of defendant on this issue.

"A trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo[.]" *Albro v Drayer*, 303 Mich App 758, 760; 846 NW2d 70 (2014). The trial court's determination of the qualifications of an expert witness is also reviewed for an abuse of discretion. *Id*.

Both parties agree that, as in this case, where no repairs had been made, the insurance policy provides for an award of "actual cash value" for the structural loss of plaintiffs' home, which is less than the full replacement cost of the home. The policy defines "actual cash value" as "replacement cost minus depreciation and obsolescence." Therefore, to prove actual cash value according to the policy, plaintiffs were required to present some evidence about the "replacement cost" as well as "depreciation and obsolescence," neither of which is specifically defined in the policy.

In determining what constitutes the "actual cash value" of an item at the time of loss, this Court has held that a trier of fact may consider "any evidence logically tending to the formation of a correct estimate of the value of the destroyed or damaged property[.]" *Davis v Nat'l American Ins Co*, 78 Mich App 225, 233; 259 NW2d 433 (1977) (quotation marks and citation omitted). Under this so-called "broad evidence rule," "courts have not abandoned consideration of either market or reproduction or replacement values in arriving at 'actual cash value,' but view them merely as guides in making that determination, rather than shackles compelling strict adherence thereto." *Id*. at 233-234 (citation omitted). "Although damages based on speculation or conjecture are not recoverable, damages are not speculative merely because they cannot be ascertained with mathematical precision. It is sufficient if a reasonable basis for computation exists, although the result [may] be only approximate." *Berrios v Miles, Inc*, 226 Mich App 470, 478; 574 NW2d 677 (1997) (citations omitted). A lack of precise proof of damages does not preclude recovery. *Id*. "Moreover, the certainty requirement is relaxed where the fact of damages has been established and the only question to be decided is the amount of damages."

*Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 108; 535 NW2d 529 (1995). "[W]here injury to some degree is found, we do not preclude recovery for lack of precise proof [of damages]. We do the best we can with what we have." *Purcell v Keegan*, 359 Mich 571, 576, 103 NW2d 494 (1960); see also *Hofmann*, 211 Mich App at 111.

In this case, the fact that plaintiffs suffered damages was established because there was no dispute that a fire destroyed plaintiffs' home. Thus, the certainty requirement is relaxed given that only the amount of damages was in dispute. With respect to the amount of damages due to the loss of the home, the parties agree that the policy provided for an award of actual cash value, unless actual repair or replacement is completed, in which case plaintiffs would be entitled to the replacement cost. Defendant argues that it was entitled to a directed verdict in part because plaintiffs did not present evidence that any part of the home had been repaired or replaced. Neither party presented any evidence that any work has been done on the home. To the contrary, attorneys for both parties admitted that no work had been done. Therefore, defendant's argument that plaintiffs were required to have someone specifically testify that the home had not been repaired or replaced in order to support a claim for damages is without merit. This was not a contested issue at trial. Likewise, any claim that the replacement cost exhibit was not accurate because it included items for the basement is without merit. The exhibit contained line items. The fact that the evidence contained more information than necessary to determine a "replacement value," should that be the proper measure of damages, does not render the evidence inadmissible or Marx's testimony incompetent. Defendant would have been free to present competing evidence of what it considered to be the proper replacement value, or argue to the jury that it should disregard the line items concerning the basement when arriving at its own determination of the proper replacement value.

The trial court erred in refusing to admit Marx's testimony concerning depreciation because of Marx's statements concerning his involvement in preparing the depreciation portion of plaintiffs' damages evidence. First, while the trial court appears to have found that Marx's statements concerning his involvement were inconsistent with Poorman's, this is not the case. Poorman was asked by defense counsel whether he made the decisions about depreciation and actual cash value, and replied that he did. But when asked how the depreciation was calculated, Poorman stated, among other things, that he spoke with Marx, and later admitted that all of his information about the file came from Marx. Later, he again stated that, based on the information that had been provided to him, including the quality of materials, he thought that it was a fair depreciation amount. Marx's testimony was not inconsistent with this. Marx stated that he was involved in calculating the depreciation in this case, and that he had made the initial determination concerning depreciation. He then discussed it with Poorman and explained the basis for his decision to Poorman. While Poorman had the ability to overrule Marx's decision, he did not do so "to [Marx's] knowledge." Had Poorman testified, the jury could reasonably have found that both were involved in arriving at the depreciation amount, especially considering that Poorman was in a supervisory role and based his determination on Marx's experience as well.

Second, even if this were not the case, there is no basis for concluding that a trial court can simply refuse to allow a witness to testify because his testimony might differ from, or even directly contradict another witness's testimony. To the contrary, Marx was competent to testify under MRE 601. Marx testified that he had personal knowledge of preparing, or assisting

-4-

Poorman in preparing, the depreciation and thus was competent to testify about its preparation under MRE 602. Defendant could certainly have cross-examined Marx concerning his actual participation in the depreciation calculation.

Although plaintiffs did not offer Poorman as an expert witness on depreciation, he arguably presented an adequate foundation to be qualified. MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Poorman's testimony provided a sufficient basis to find that he met these qualifications. Nevertheless, in his explanation for how he arrived at an appropriate depreciation amount, he stated that depreciation is not an exact science. Decisions from this Court and other jurisdictions support this assertion. See *Salesin v State Farm Fire & Cas Co*, 229 Mich App 346, 368; 581 NW2d 781 (1998), and *Louisiana DOTD v McKeithen*, 976 So2d 832, 840 (La App, 2008). Poorman also explained how depreciation is calculated generally, including review of the building materials used and the overall condition of the structure. Marx could have provided a similar explanation to the jury.

Marx testified about his experience, which included several years of expertise in providing property estimates, and he stated that he had written between 2,500 and 3,000 estimates for insurance carriers, and had written 1,000 estimates for Michigan Fire Claims, Inc. Marx also testified that Michigan does not require estimators be licensed. Defendant has presented nothing to dispute this. The underlying fact, i.e., the valuation of the home, was in evidence and the trial court had found that the methods and the program Marx used to arrive at this valuation were generally used in the industry. In addition, "MRE 703 does not preclude an expert from basing an opinion on the expert's personal knowledge." *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 735; 761 NW2d 454 (2008).

In sum, given the recognition that depreciation testimony is both inherently subjective and that the court is supposed "to do the best we can with what we have," *Purcell*, 359 Mich 576, Marx could certainly have been qualified as an expert witness on depreciation and testified thereto if the trial court had not erred in refusing to allow him to testify about depreciation at all.

For these reasons, particularly where plaintiffs had already demonstrated that they had suffered a loss, thus lessening their burden here, *Unibar Maintenance Servs, Inc*, 283 Mich App at 634; *Hofmann*, 211 Mich App at 108, the trial court erred when it granted a directed verdict on the basis of the evidence plaintiffs presented regarding the amount of damage to their home.

Plaintiffs similarly argue that the trial court erred in directing a verdict based on its conclusion that plaintiffs failed to present adequate evidence concerning damages to Diane's personal property. As with the loss involving the home itself, the fact of plaintiffs' damages was

established because it was undisputed that a fire in plaintiffs' home damaged Diane's personal property. Moreover, Diane's testimony included detailed descriptions of the property items she owned and the damage to them, which were accompanied by the presentation of relevant photographs. Hence, the certainty requirement is relaxed, given that only the amount of damages was in dispute. *Unibar Maintenance Servs, Inc*, 283 Mich App at 634; *Hofmann*, 211 Mich App at 108.

During Diane's testimony, plaintiffs sought to introduce the itemized list of personal property Diane prepared in conjunction with Billy Ray SaintMarie, a former employee of Michigan Fire Claims, Inc. In addition, Diane testified both at trial and at her earlier deposition that she participated in arriving at the values for some of the items and, after the other valuations were made by SaintMarie, she had the opportunity to review and correct them, and did correct some of the values. Despite this testimony, the trial court initially determined that the document contained inadmissible hearsay "as to the columns that would have been prepared by others" and only conditionally admitted it into evidence.

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "As used in the definition of hearsay, the term "statement" means "(1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended by the person as an assertion." MRE 801(a). Generally, hearsay is not admissible. MRE 802. However, MRE 803(6), also known as the business record exception, provides the following exception:

> Records of Regularly Conducted Activity. A memorandum, report, record, or *data compilation*, in any form, of acts, transactions, occurrences, events, conditions, *opinions*, or diagnoses, made at or near the time *by, or from information transmitted by, a person with knowledge*, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. [Emphasis added.]

Because the personal property inventory was prepared in the regular course of Michigan Fire Claims' business, the list itself falls within the business records exception. Moreover, the trial court erred to the extent that its decision relied on any claim that hearsay within hearsay prevented introduction of the inventory. Because the valuations were "data compilations" and "opinions" made in the course of that business activity, made "by, or from information transmitted by, a person with knowledge," these valuations were themselves admissible under this exception. Diane testified, both at trial and in an earlier deposition, that she participated in arriving at the values for some of the items and, after the other valuations were made by SaintMarie, she had the opportunity to correct them, and did correct some of the values. She thus demonstrated that values were compiled by, or from information transmitted by, persons

-6-

with actual knowledge. Similarly, while Kelly Bridgewater, another former employee, prepared depreciation calculations, these were also data compilations and opinions made in the course of business, by or with input from someone with knowledge.

Moreover, Poorman's testimony, had the trial court not found him incompetent to testify, would have been offered in part to show that the records were accurate and were prepared in the course of Michigan Fire Claims, Inc.'s business. When discussing his participation with respect to the personal property claim, Poorman stated that the personal property team prepared documents for the personal property adjuster, and Poorman "ultimately" oversaw the entire file. This satisfies the "custodian" element of the exception. See *People v Vargo*, 139 Mich App 573, 580–581; 362 NW2d 840 (1984) (providing that the individual must have "[k]nowledge of the business involved and its regular practices" to qualify). This inventory was therefore admissible under the business records exception. The trial court abused its discretion in ruling otherwise.

In addition, the trial court admitted into evidence plaintiffs' proof-of-loss submission. This exhibit contained a summary of both the loss and damage to the structure, as well as the calculations of actual cost. During her deposition, Diane Miller testified that this proof-of-loss statement was accurate, and stated that she estimated that it would take between $100,000 and $200,000 to replace the personal property. She again adopted this proof of loss as an accurate assessment of the actual value of the personal property at trial. While the trial court later ordered the proof of loss redacted to remove the estimates contained therein, which we conclude she should not have done, Diane's testimony still stood. The proof of loss itself, along with Diane's testimony concerning the actual items lost in the fire and her own estimate of the value of the personal property, provided sufficient evidence of the amount of the loss to provide a reasonable basis for computation of a permissible recovery under the relaxed standard appropriate here, even without the admission of the inventory. *Unibar Maintenance Servs, Inc*, 283 Mich App at 634; *Berrios*, 226 Mich App at 478; *Hofmann*, 211 Mich App at 108.

We thus conclude that the trial court abused its discretion when it granted a directed verdict concerning plaintiffs' proof of damages for the loss of Diane Miller's personal property.

In its cross-appeal, defendant argues that the trial court erred in both entertaining plaintiffs' motion to reform the insurance contract, and in granting reformation. We disagree.

Interpretation and application of court rules are questions of law, which we review de novo. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). We review for an abuse of discretion the trial court's determination whether a mutual mistake justifies granting the equitable remedy of reformation of a contract. *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 26, 31; 331 NW2d 203 (1982).

"A court of equity has power to reform the contract to make it conform to the agreement actually made." *Casey v Auto Owners Ins Co*, 273 Mich App 388, 398; 729 NW2d 277 (2006), quoting *Raymond v Auto–Owners' Ins Co*, 236 Mich 393, 396; 210 NW 247 (1926). Reformation is an equitable remedy available for contracts where the writing "fails to express the intentions of the parties . . . as the result of accident, inadvertence, mistake, fraud, or inequitable conduct . . . ." *Najor v Wayne Int'l Life Ins Co*, 23 Mich App 260, 272; 178 NW2d 504 (1970); see also *Holda v Glick*, 312 Mich 394, 403-404; 20 NW2d 248 (1945). Where the basis for a

proposed reformation is mistake, the mistake must be mutual. *Id.*; *Retan v Clark*, 220 Mich 493, 496; 190 NW 244 (1922). In addition, the person seeking reformation due to mistake must present clear and convincing evidence of the mistake and the mutuality "proof to warrant reformation must be clear and convincing." *Holda*, 312 Mich at 403-404. And, a mistake in law, i.e., a mistake by one side or the other regarding the legal effect of an agreement, is not a basis for reformation. *Schmalzriedt v Titsworth*, 305 Mich 109, 119–120; 9 NW2d 24 (1943); *Olsen v Porter*, 213 Mich App 25, 29; 539 NW2d 523 (1995).

Citing *Anderson v Mollitor*, 223 Mich 159, 163; 193 NW 851 (1923), defendant argues that reformation must be pleaded in the complaint before it can be granted. However, *Anderson* involved the somewhat unique circumstance in which the plaintiffs had asked in their initial complaint for reformation of a deed in order to have it comply with a land contract for the property that had preceded the deed, and *defendants*, who claimed that the deed was correct and the land contract incorrect, did not ask for reformation of the underlying land contract until a later hearing. *Id*. at 161-162. The trial court did not allow *defendants* to seek reformation at that juncture. That case is distinguishable on its facts.

Moreover, amendment was not strictly required because reformation is a remedy, not a claim. *Holda*, 312 Mich at 403-404. As demonstrated in *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242; 819 NW2d 68 (2012), a party need not necessarily "plead" reformation in order to have this remedy applied. *Corwin* involved a priority dispute among three automobile insurance companies—none of which plead or sought reformation. A panel of this Court determined that one of the insurance company's policies contravened the Michigan no-fault act and allowed the company to avoid and shift its statutory responsibilities. *Id*. at 247. The Court thus reformed the insurance company's policy to comply with Michigan law by including certain persons as "named insureds" in the policy. *Id*. at 247-248.

Defendant also cites MCR 2.112(B)(1), which provides:

(B) Fraud, Mistake, or Condition of Mind.

(1) In allegations of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity.

However, defendant ignores MCR 2.112(D), which provides:

(D) Action on Policy of Insurance.

(1) In an action on a policy of insurance, it is sufficient to allege

(a) the execution, date, and amount of the policy,

(b) the premium paid or to be paid,

(c) the property or risk insured,

(d) the interest of the insured, and

(e) the loss.

In addition, plaintiff's complaint did include a request that the trial court issue a judgment of damages, along with "costs, interest and attorney fees as well as other relief to which they may be entitled." Even if plaintiffs should have pleaded reformation initially, MCR 2.118(A)(2) provides that "[l]eave [to amend] shall be freely given when justice so requires." See also *Tisbury v Armstrong*, 194 Mich App 19, 21; 486 NW2d 51 (1991) ("the policy of this state favor[s] the meritorious determination of issues"), and MCR 2.118(C)(1). For these reasons, defendant has not established that the trial court erred in entertaining plaintiffs' motion for reformation of the contract.

Defendant has also failed to show that the trial court abused its discretion in granting plaintiffs' request to reform the insurance contract to list Diana as an insured. Our Supreme Court's decision in *Heath Delivery Serv v Mich Mut Liability Co*, 257 Mich 482; 241 NW 191 (1932), refutes defendant's argument that plaintiffs were precluded from asking for reformation on the ground that they were charged with reading the contract language, which provided that only Robert Miller was a named insured. In *Heath Delivery Serv*, the plaintiff and the defendant insurance company entered into an agreement for the defendant to provide insurance coverage on 20 of the plaintiff's vehicles. The policy inadvertently failed to list two of the plaintiff's trailers, one of which was subsequently involved in a collision. *Id*. at 484-485. The Court determined that reformation of the contract was proper because it was undisputed that the parties had agreed that the policy should cover all 20 vehicles. *Id*. at 485. While noting the duty of an insured to read the insurance policy, the Court nevertheless held that "[w]here through fault of the insurer an insurance policy does not cover the person or property intended, it may be reformed." *Id*. at 486. In response to the defendant's argument that the plaintiff was not entitled to reformation because he was negligent in failing to read the policy and ensure that it covered the intended vehicles, the Court stated that failure to read the policy does not always prevent reformation of a contract. *Id*. The Court noted that, were this the case, then "there would be few, if any, cases where a policy is reformed." *Id*. The Court then stated that the rule requiring a party to read a contract cannot apply where the undisputed testimony evidences the parties' agreement and the executed contract does not reflect that agreement. *Id*.; see also *Whitney v Nat'l Fire Ins Co*, 296 Mich 38, 43; 295 NW 551 (1941), and *Mantua v Auto Club Ins Ass'n*, 206 Mich App 274, 280; 520 NW2d 380 (1994).

Plaintiffs presented evidence that defendant's agent Soper specifically told Diane that the policy would provide "complete coverage" for her home and both her and her husband's personal property, and that it would cover both Robert and herself. Diane stated that Soper never asked about excluding her from coverage or told her or indicated that she would not be a named insured under the policy. Diane also averred that she never expressed any intent that she not be covered. Nothing in the application contradicts Diane's testimony about her discussion with Soper and the understanding that they had when she applied for the homeowners' policy. In contrast, the application supports her assertion that the parties intended for both plaintiffs to be insureds. While Robert Miller's name was written in the section for "applicant information," Diane signed as an "applicant." In addition, Soper's subsequent statements after learning of Diane and Robert's separation that Diane should not worry and that she was still "completely covered" also supports the trial court's determination that both parties understood that Diane would be a named insured under the policy.

-9-

To the extent that defendant suggests that Soper could not bind defendant through his actions, we disagree. Soper was a "captive" agent, who worked for one insurer, and thus is the agent of that insurer, i.e., defendant. And notwithstanding the general no-duty-to-advise rule, see *Harts v Farmers Ins Exch*, 461 Mich 1, 7; 597 NW2d 47, 50 (1999), our Supreme Court also concluded in *Harts* that "when an event occurs that alters the nature of the relationship between the agent and the insured," a special relationship may result, creating a duty on the part of the agent to advise an insured in some respect regarding insurance issues. *Id*. at 10. The change in the agent-insured relationship arises when (1) the agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires a clarification, (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured. *Id*. at 10-11. When a special relationship exists, an agent assumes a duty to advise the insured regarding the adequacy of insurance coverage. *Id*.

Here, when Diane sought advice from his office, Soper's later reassurances that the policy would remain effective and cover her even during plaintiffs' separation acted as an affirmation of that fact by defendant to which it is bound and provides supporting evidence that the agent who initially prepared the policy acted under a mutual mistake when doing so. See *Bleam v Sterling Ins Co*, 360 Mich 208, 213; 103 NW2d 466 (1960) (the mistakes of a corporation's agents and employees are the mistakes of the corporation, warranting reformation of a resulting contract). Although defendant maintains that the trial court placed an unwarranted burden upon it by noting that it had not presented any evidence to contradict plaintiffs' evidence, we instead conclude that the trial court's remarks were a comment on the strength of the evidence supporting reformation, not improper burden-shifting.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Deborah A. Servitto
/s/ Michael J. Kelly