MERCY MT CLEMENS CORPORATION v AUTO CLUB INSURANCE
ASSOCIATION

Docket No. 180140. Submitted July 3, 1996, at Lansing. Decided September 20, 1996, at 9:00 A.M. Leave to appeal sought.

Mercy Mt. Clemens Corporation and two other nonprofit organizations that operate hospitals brought an action in the Macomb Circuit Court against Auto Club Insurance Association and three other automobile no-fault insurers, seeking to recover the full amount charged for medical services provided on behalf of the defendants' insureds. Auto Club sought discovery of the amounts actually paid for the same medical services by other third-party payers for medical services, including public and private health-coverage providers, worker's compensation insurers, and health maintenance organizations. The court, Michael D. Schwartz, J., granted the plaintiffs a protective order on the basis that the information sought by Auto Club was beyond the scope of discovery. Auto Club appealed by leave granted.

The Court of Appeals *held*:

1. Section 3107 of the no-fault act, MCL 500.3107; MSA 24.13107, provides that a no-fault insurer must pay personal protection benefits for "all reasonable charges incurred for reasonably necessary" medical expenses of its insureds. Section 3157, MCL 500.3157; MSA 24.13157, provides that health-care providers may charge "a reasonable amount" for products or services that are provided and that a charge may not exceed the charges for like products and services "in cases not involving insurance." The term "insurance," as used in § 3157, is not limited to no-fault insurance, but rather includes other health-care insurance. Because the payments accepted by the plaintiffs from the various entities that provide third-party health-care coverage are not "customary charges for like products, services and accommodations in cases not involving insurance," those payments may not be used to determine the customary charges of the plaintiffs for the purpose of § 3157. Accordingly, the trial court did not abuse its discretion in granting the protective order on the basis that the information requested was not reasonably calculated to lead to the discovery of admissible evidence.

2. Although third-party payers for health-care products and services such as Medicare, Medicaid, health maintenance organizations, and preferred provider organizations technically may not be insurers, the benefits they provide are properly considered as insurance for the purpose of § 3157, and the payments made by them for their subscribers should not be used to determine the customary charges for medical products, services, and accommodations in cases not involving insurance.

Affirmed.

1. INSURANCE — NO-FAULT — CUSTOMARY CHARGES — HEALTH-CARE INSURANCE.

The term "insurance," as used in the provision of the no-fault act that limits the reasonable charge by health-care providers for products, services, or accommodations rendered on behalf of an injured insured to the customary charge in a case not involving insurance is not limited to no-fault insurance, but rather includes other health-care insurance (MCL 500.3157; MSA 24.13157).

2. INSURANCE — NO-FAULT — CUSTOMARY CHARGES — MEDICARE — HEALTH MAINTENANCE ORGANIZATIONS.

The benefits provided by third-party payers for health-care products and services such as Medicare, Medicaid, health maintenance organizations, and preferred provider organizations, even though those payers technically may not be insurers, are properly considered as insurance for the purpose of the provision of the no-fault act that limits the reasonable charges by health-care providers for products, services, or accommodations rendered on behalf of injured no-fault insureds to no more than the customary charges for like products, services, and accommodations in a case not involving insurance; the payments made by such payers of benefits on behalf of their subscribers should not be used to determine the customary charges of the health-care providers for their medical products, services, and accommodations in cases not involving insurance (MCL 500.3157; MSA 24.13157).

*Monica Farris Linkner*, for the plaintiffs.

*Becker, Lanctot, McCutcheon, Schoolmaster, Taylor & Hom* (by *David J. Lanctot* and *Clair W. Hoehn*) (*Gross, Nemeth & Silverman, P.L.C.*, by *Steven G. Silverman*, of Counsel), for the defendant.

Before: MURPHY, P.J., and HOLBROOK JR., and O'CONNELL, JJ.

O'CONNELL, J. Defendant Auto Club Insurance Association (hereinafter defendant) appeals by leave granted from the circuit court's protective order barring discovery. Plaintiffs sued defendant and other no-fault insurers to recover the full amount charged for medical services provided on behalf of patients whose medical treatment was covered under automobile no-fault insurance policies issued by the various defendants. Defendant sought discovery of amounts actually paid for the same medical services by other third-party payers such as Medicare, Medicaid, Blue Cross-Blue Shield (Blue Cross), worker's compensation insurers, health maintenance organizations (HMOs), and preferred provider organizations (PPOs). Plaintiffs moved for a protective order pursuant to MCR 2.302(C) on the basis that the information sought was beyond the scope of discovery. The circuit court granted plaintiffs' motion, and this Court granted defendant leave to appeal. We affirm the order of the circuit court.

This case involves a dispute over the amount a no-fault insurer must pay for medical services under § 3157 of the no-fault act, MCL 500.3157; MSA 24.13157. Plaintiffs are nonprofit organizations that operate three hospitals located in Pontiac, Port Huron, and Mt. Clemens. Plaintiffs' hospitals provided medical care for patients injured in automobile accidents and routinely billed no-fault automobile insurers directly for the medical care provided to their insureds. Defendant was the no-fault insurer for a number of these patients. Starting about the spring of 1992, defendant and several other no-fault insurers stopped paying the full amounts billed for services provided by plaintiffs and, instead, began tendering

lesser amounts. These lower payments were calculated using the rules for worker's compensation reimbursement of medical costs. These amounts were significantly less than those billed by plaintiffs. For example, defendant paid $6,650.55 for medical care billed at $11,296.

Plaintiffs sued defendant and the other no-fault insurers who engaged in this practice to recover the full amounts charged. As an affirmative defense to plaintiffs' claims, defendant alleged that the charges sought by plaintiffs violated § 3157 of the no-fault statute, which provides that a health-care provider may charge a reasonable amount but the amount cannot be more than it customarily charges. Defendant alleged that "[i]n this context, 'charge' means the amount customarily accepted by a plaintiff as payment in full." In support of this affirmative defense, defendant sought to depose a witness provided by plaintiffs, who knew the billing and payment practices of the hospitals involved, concerning

> the percentages of the hospital(s)' revenue represented by various third party payers, such as Medicare, Medicaid, Blue Cross, workers' compensation, HMOs, PPOs, etc.; what percentage of the bill and what percentage of costs that each of the third party payers pay during a fiscal period; the financial information submitted by the State of Michigan for Medicaid purposes; the G-2 worksheet, and the facilities' cost-to-charge ratio as is used in the workers compensation system.

In response to this notice, plaintiffs moved for a protective order pursuant to MCR 2.302(C). Plaintiffs argued that under § 3157 their charges could not exceed the amount customarily charged for such services "in cases not involving insurance." Plaintiffs

maintained that any information pertaining to billing or payment in cases involving other types of insurance, such as those listed in the notice of deposition, was irrelevant, immaterial, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. In response, defendant argued that the amounts accepted in payment from other payers for the same medical services was relevant to determining whether the amounts charged were reasonable and customary. Defendant makes the same arguments in this appeal, namely, that under § 3157 plaintiffs could not charge defendant an amount exceeding what it would customarily charge "in cases not involving no-fault insurance" and that the third-party payers referred to in its notice of deposition were not in fact insurers. The circuit court agreed with plaintiffs and found that the amounts actually paid for those services by Medicare, Medicaid, Blue Cross, HMOs, PPOs, and worker's compensation were outside the parameters of discovery.

Defendant raises two issues on appeal, neither of which merits reversal of the circuit court's order.

I

Defendant first argues that it was entitled to discovery of the requested information because the circuit court misinterpreted § 3157 of the no-fault act. Defendant maintains that the reference to "insurance" in § 3157 of that act should be read to refer to no-fault insurance only, rather than all types of insurance that provide payment for medical care. We disagree.

We review a trial court's decision to grant or deny discovery for abuse of discretion. *Linebaugh v Sheraton Michigan Corp*, 198 Mich App 335, 343; 497 NW2d

585 (1993). Whether the circuit court abused its discretion in denying defendant's motion for discovery hinges upon the interpretation of § 3157, which is a question of law. We review such questions of law for legal error. *People v Thomas*, 438 Mich 448, 452; 475 NW2d 288 (1991); *Smeets v Genesee Co Clerk*, 193 Mich App 628, 633; 484 NW2d 770 (1992).

The words "in cases not involving insurance" in § 3157 should not be interpreted to mean "in cases not involving no-fault insurance." Section 3107(1)(a) of the no-fault act, MCL 500.3107(1)(a); MSA 24.13107(1)(a), provides that personal protection insurance benefits are payable for "[a]llowable expenses consisting of all reasonable charges · incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Under § 3107, a no-fault insurer is liable only for medical expenses that constitute a reasonable charge for necessary medical services. *McGill v Automobile Ass'n of Michigan*, 207 Mich App 402, 405; 526 NW2d 12 (1994). Section 3157 of the act prohibits medical-care providers from charging more than a reasonable fee. *Id.* Section 3157, MCL 500.3157; MSA 24.13157, provides:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered. *The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance.* [Emphasis added.]

Read in harmony, §§ 3107 and 3157 "clearly indicate that an insurance carrier need pay no more than a reasonable charge and that a health care provider can charge no more than that." *McGill, supra,* p 406. This statutory scheme serves the public policy that the existence of no-fault automobile insurance should not increase medical costs. *Id.,* pp 407-408.

Defendant's interpretation of § 3157 is inconsistent with prior rulings by this Court. In *Hofmann v Auto Club Ins Ass'n,* 211 Mich App 55, 107; 535 NW2d 529 (1995), this Court interpreted the word "insurance" in § 3157 to include health insurance as well as no-fault insurance, noting that the relevant inquiry under § 3157 "is not the amount that is customarily charged to other health insurers, but rather the amount that is customarily charged 'in cases not involving insurance.'" In *Munson Medical Center v Auto Club Ins Ass'n,* 218 Mich App 375; 554 NW2d 49 (1996), this Court concluded that Auto Club's asserted definition of "customary charges" under § 3157 was legally erroneous. *Munson* followed the reasoning in *Hofmann* that the words "customary charges" as used in § 3157 does not mean the amounts that a hospital accepts from health insurers as payment in full for services rendered. *Id.,* p 383. Although *Hofmann* and *Munson* differ factually and procedurally from the instant case, their interpretation of § 3157 applies to the instant case.

Defendant seeks to prove that plaintiffs' bills for medical services are unreasonable and exceed the amount plaintiffs customarily charge for such services by showing that plaintiffs accept lower amounts as payment in full from such entities as Medicare, Medicaid, Blue Cross, worker's compensation, HMOS,

and PPOs. In both *Munson* and *Hofmann,* this Court concluded that data regarding payments made by third-party payers such as Medicaid, Medicare, or private health insurers, which were likely to be subject to statutory or contractual limitations, could not be used to determine the customary charge under § 3157. *Munson, supra,* p 384; *Hofmann, supra,* p 113. Similarly, this Court has rejected the arguments of no-fault insurers that they should be obligated to pay only the amount previously accepted as payment in full under Medicaid where Medicaid benefits were mistakenly made on behalf of a patient whose injuries were covered by no-fault insurance. *Hicks v Citizens Ins Co of America,* 204 Mich App 142, 146; 514 NW2d 511 (1992); *Johnson v Michigan Mutual Ins Co,* 180 Mich App 314, 321-322; 446 NW2d 889 (1989).[1] In *Johnson,* this Court found that the insurer's argument that the hospital's charges could only approximate those payable by Medicaid was "an untenable position in light of the unambiguous statutory language of [§ 3157], which clearly permits health care providers . . . to charge reasonable amounts not to exceed their customary charges in cases not involving insurance." *Id.*

In *Hofmann, supra,* this Court rejected this defendant's argument that the payments from Blue Cross for services, as opposed to the original charges made by the health-care providers, were the proper criteria for determining the "customary charge" for those services under § 3157. The Court explained:

---

[1] However, this Court reached the opposite conclusion in *Sheeks v Farmers Ins Exchange,* 146 Mich App 361, 365; 379 NW2d 493 (1985).

> [A]CIA's position ignores the fact that the amounts that plaintiffs [health-care providers] receive in payment from BCBSM are subject to contractual limitations, whereas the amounts that ACIA must pay for covered medical expenses are not limited contractually. [*Id.*, p 113.]

The Court pointed out that while health and accident insurers were free to establish limits that they would pay for particular medical services, no-fault insurers were not, and that this distinction was justified by the fact that the obligation of a no-fault insurer was secondary to that of a health or accident insurer where both types of coverage exist. *Id.*, pp 113-114. This Court concluded:

> In essence, ACIA is asking this Court to establish a rule that, in situations where other health or accident coverage does not exist, the obligation of a no-fault carrier must be limited to what a health insurer would have had to pay if health insurance existed, notwithstanding that the health insurer's obligation might be controlled by contract, whereas the no-fault carrier's is not. This position does not find support in the no-fault act. [*Id.*, p 114.]

Defendant sought to obtain information regarding payments accepted by plaintiffs from third-party payers such as Medicare, Medicaid, worker's compensation, Blue Cross, HMOs, and PPOs in order to prove that plaintiffs' customary charges for medical services were in fact significantly lower than the amounts they charged defendant. Reimbursement from Medicare, Medicaid, and worker's compensation insurance is set by statutory and regulatory limitations. Reimbursement from Blue Cross, HMOs, and PPOs is set by contracts between those entities and health-care providers. Under *Munson, Hofmann, Hicks,* and *Johnson,* such information is not admissible to prove the cus-

tomary charge that defendant must pay under § 3157. As stated in *Hofmann, supra,* p 109, "a trial court would not be justified in using amounts that are subject to third-party contractual or statutory limitations as a benchmark for determining the extent of a health-care provider's customary charge." In light of this precedent, we conclude that the circuit court did not err in finding that the information sought on discovery was not relevant to whether the amounts charged by plaintiffs met the requirements of §§ 3107 and 3157 of the no-fault act and that it was not reasonably calculated to lead to the discovery of admissible evidence. The circuit court did not abuse its discretion by granting plaintiff's requested protective order.

II

Plaintiff next argues that the circuit court committed legal error because the payments made by Medicare, Medicaid, worker's compensation, Blue Cross, HMOs, and PPOs did not constitute "insurance" under § 3157 of the no-fault act. We disagree.

Regardless of whether third-party health-coverage providers such as Medicare, Medicaid, worker's compensation, Blue Cross, HMOs, and PPOs are technically insurance carriers, the amounts that plaintiffs accepted as payment in full from those entities cannot be used to prove the customary charge for those services under § 3157 of the no-fault act. In prior cases this Court has treated such third-party health coverage as health insurance to be excluded from consideration when determining the customary charge under § 3157. *Hofmann, supra,* p 109; *Johnson, supra,* pp 321-322. For the purposes of § 3157,

such health-care coverage is considered "insurance" even if it is not provided by an entity that meets defendant's strict definition of an insurer.

Affirmed.