*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

JOAN E. DAHL,

        Plaintiff-Appellee,

v

KARL C. DAHL,

        Defendant-Appellant.

UNPUBLISHED
April 8, 2021

No. 351103
Kent Circuit Court
LC No. 18-008092-DO

Before: GLEICHER, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Following a brief marriage, Joan Dahl filed for divorce from her husband Karl Dahl. Joan was a restaurateur before the marriage and Karl assisted in her endeavors during the marriage. Karl asserts that his efforts transformed certain of these businesses into marital property and he sought a share. The circuit court awarded these businesses and their accompanying debt, to Joan. We affirm.

I

Joan and her first husband owned and ran several Little Caesars franchises. Joan continued this business after her husband's death, forming Joandy, Inc. and Jo and Jo Foods, Inc. to hold 11 Little Caesars stores. Joan was also the sole member of three LLCs that owned the property housing some of the restaurants.

Joan and Karl met through an online dating website in July 2015. Karl moved from Wisconsin to live with Joan that fall. Karl shut down his excavation business and put his house on the market. Joan purchased a nearly $1 million home for the couple and continued to make Karl's land contract and utility payment for the Wisconsin house until it sold.

Once in residence, Karl provided maintenance services for Joan's existing restaurants. Joan also decided to branch out into Dickey's Barbeque restaurants. With her money and Karl's additional labor, Joan organized new LLCs and purchased new properties. Of special import to this appeal, Joan bought a building in Rockford to move one of her existing Little Caesars stores and to open a Dickey's. Karl did the demolition at the Rockford location himself. This, it turned

out, was a bad idea. Karl and the general contractor fought over who caused structural problems in the building. Joan and Karl disagreed over whether to litigate the dispute. Ultimately, Joan settled with the general contractor out of court. Karl felt betrayed and returned to Wisconsin to take a break. Joan responded by filing for divorce.

Joan asked the court to award her all the companies and commercial real estate. She identified some as her separate, premarital property and urged that the companies formed and property purchased during the marriage was financed with her separate, premarital wealth. Karl, on the other hand, sought compensation for the labor he invested in the businesses. He also sought an interest in the companies formed during the marriage. After a bench trial, the trial court awarded Joan all interest in Joandy and Jo and Jo Foods as her separate property. The court further awarded Joan all the companies formed and properties purchased during the marriage, and made her solely responsible for the significant debt connected to those companies.

II

Karl challenges the trial court's denial of his request for compensation for the work he performed during the marriage for Joan's separate property. In doing so, Karl cites four theories: MCL 552.401, the retained earnings of the companies became marital property, quantum meruit, and implied-in-fact contract.

"In granting a divorce judgment, the trial court must make findings of fact and dispositional rulings." *Reed v Reed*, 265 Mich App 131, 150; 693 NW2d 825 (2005). We review for clear error those factual findings, including those related to the division of property. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Id.* "If this Court upholds the trial court's findings of fact, it must then decide whether the dispositional ruling was fair and equitable in light of those facts." *Reed*, 265 Mich App at 150. "The trial court's dispositional ruling is discretionary and will be affirmed unless this Court is left with the firm conviction that it was inequitable." *Id.*

A

Karl first contends that he was entitled to compensation for the work he performed for Joandy and Jo and Jo Foods under MCL 552.401. "In any divorce action, a trial court must divide marital property between the parties and, in doing so, it must first determine what property is marital and what property is separate." *Cunningham*, 289 Mich App at 200. "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Id.* at 201. However, MCL 552.401 permits the invasion of a spouse's separate property "if it appears from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property." "When one significantly assists in the acquisition or growth of a spouse's separate asset, the court may consider the contribution as having a distinct value deserving of compensation." *Reeves v Reeves*, 226 Mich App 490, 495; 575 NW2d 1 (1997). "Once a court has determined what property is marital, the whole of which constitutes the marital estate, only then may it apportion the marital estate between the parties in a manner that is equitable in light of all the circumstances." *Cunningham*, 289 Mich App at 201. "As a general principle, when the marital estate is divided each party takes away from

the marriage that party's own separate estate with no invasion by the other party." *Id*. (cleaned up).

In this case, the trial court determined that Joandy and Jo and Jo Foods were Joan's separate property. Karl does not dispute that ruling. Rather, he contends that the trial court erred by refusing to invade those companies under MCL 552.401 because he performed significant work on the Little Caesars stores that Joandy and Jo and Jo Foods held. It is clear from the record that Karl performed regular maintenance for the Little Caesars stores, remodeled three locations, updated the operating systems for eight stores, and helped move the Rockford Little Caesars to its new location. Karl proffered a list of the services he provided along with his estimation of his labor costs. While these efforts were certainly useful, Karl failed to provide any proof that they increased the value of Joandy or Jo and Jo Foods. Absent a connection between the labor and an increase in value, the trial court could not invade the assets under MCL 552.401.

B

Karl next contends that the companies' retained earnings constituted marital property and he was entitled to a share as compensation for his work. The retained earnings should be considered in valuing the companies, not treated as a separate asset to be categorized and divided. As will be discussed later, the companies involved in this case had negative values, even considering their earnings.

C

Karl's remaining two claims for compensation are similar. He seeks compensation under two quasi-contractual doctrines: quantum meruit and implied-in-fact contract.

"The essential elements of a quasi contractual obligation, upon which recovery may be had, are the receipt of a benefit by a defendant from a plaintiff, which benefit it is inequitable that the defendant retain." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 195; 729 NW2d 898 (2006) (cleaned up).

[I]n order to sustain a claim of quantum meruit or unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant. In other words, the law will imply a contract to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense. [*Id*.]

"[U]nder the equitable doctrine of unjust enrichment, a person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Kammer Asphalt Paving Co, Inc v East China Twp Sch*, 443 Mich 176, 185; 504 NW2d 635 (1993) (cleaned up).

A contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction. The existence of an implied contract, of necessity turning on inferences drawn from given

circumstances, usually involves a question of fact, unless no essential facts are in dispute. [*Erickson v Goodell Oil Co*, 384 Mich 207, 212; 180 NW2d 798 (1970).]

Karl contends that the trial court should have applied these quasi-contract law principles to compensate him for the work that he performed for his wife's companies. However, because this was a domestic-relations matter, the trial court properly found that Joandy and Jo and Jo Foods were Joan's separate property. The court then properly determined that Karl was not entitled to compensation under MCL 552.401 because he failed to prove that the companies appreciated in value during the marriage. Even if we could apply these theories, Karl's claims would fail. Joan explicitly and repeatedly offered to compensate Karl for his services by placing him on payroll, and Karl repeatedly refused. Joan offered to enter into a contract and Karl declined, preferring other methods of compensation. He cannot change his mind now.

III

Karl argues next that he was entitled to a 50% share in the companies formed during the marriage. The trial court found that several companies formed by Joan and Karl during the marriage—DahlBQ, Inc.; Jenique, LLC; Barbizza Bluffs, LLC; Rockzza II, LLC; and Spartzza, LLC—were marital property but awarded them, and their debts, to Joan. Karl spends considerable time in his appellate brief trying to persuade this Court that those companies were marital property, an unnecessary exercise. The proper question before this Court is whether the trial court's division of this marital property was equitable.

"In dividing marital assets, the goal is to reach an equitable division in light of all the circumstances." *McNamara v Horner*, 249 Mich App 177, 188; 642 NW2d 385 (2002). "[T]he division need not be mathematically equal," but "an equitable distribution . . . will be roughly congruent." *Id.* "Any significant departures from congruence must be clearly explained by the court." *Id.* Various factors outlined by the Supreme Court in *Sparks v Sparks*, 440 Mich 141; 485 NW2d 893 (1992), including "the duration of the marriage, the contribution of each party to the marital estate, each party's station in life, each party's earning ability, each party's age, health, and needs, fault or past misconduct, and any other equitable circumstance." *Byington v Byington*, 224 Mich App 103, 115; 568 NW2d 141 (1997). "The significance of each of these factors will vary from case to case, and each factor need not be given equal weight where the circumstances dictate otherwise." *Id.*

Karl contends that the trial court skipped a crucial step in dividing the marital assets—determining their value. "As a prelude to" the property division in a divorce judgment, "a trial court must first make specific findings regarding the value of the property being awarded in the judgment." *Olson v Olson*, 256 Mich App 619, 627; 671 NW2d 64 (2003). "There are numerous ways [to] make such a valuation," and "if the value is in dispute," the court may not shirk this duty. *Id.* Failing "to place a value on a disputed piece of marital property" is clear error. *Id.* at 627-628.

Contrary to Karl's insistence, the court did value the companies before dividing the marital property. The court determined that the companies actually had negative equity because of the significant debt carried by each. With no equity, there was nothing for the court to award Karl. We note that Karl also makes a completely inconsistent challenge—that the trial court did value the companies, but the valuations were erroneous. In this regard, Karl criticizes the court's

emphasis on the debt associated with the companies. However, the trial court properly determined the companies' values based on the evidence presented at trial, specifically Joan's testimony. See *Jansen v Jansen*, 205 Mich App 169, 171; 517 NW2d 275 (1994) ("A trial court has great latitude in determining the value of stock in closely held corporations, and where a trial court's valuation of a marital asset is within the range established by the proofs, no clear error is present.").

A review of the entire property division reveals that although the trial court did not provide each party "a mathematically equal share" of the marital estate, the court adequately explained its decision. The court considered the *Sparks* factors, and the record evidence supports the court's findings.

The parties' marriage was short, lasting only approximately two years. Both contributed to the marriage in different ways. Joan financed the businesses and the couple's living expenses, while Karl provided advice and labor to the companies. But Karl's business acumen did not stand alone; Joan also brought her business experience to the marriage. There was no indication that the parties' ages or health affected their earning potential, and the record supports the trial court's finding that the parties lived comfortably during their marriage. Joan purchased their marital home, which was worth almost $1 million, and there was no indication that the parties had any issues paying their expenses. Furthermore, the record indicates that each party would be able to provide for himself or herself in the future. Joan managed her companies and supported herself before meeting Karl, and Karl had an extensive work history before meeting Joan. Karl testified that he was already working and earning significant money since the separation. However, we acknowledge that Joan's income earning ability was likely greater than Karl's considering their separate property in the divorce judgment. Furthermore, the parties disputed the reason for the divorce because although Joan blamed the dispute with the general contractor as the trigger for the divorce, Karl contended that he did not want the marriage to end.

The trial court also properly considered additional relevant factors. For example, the court noted that Karl never used any of his own money for the parties' living expenses or for any of the companies. Karl refused to be placed on payroll, but also was not responsible for any of the debt or financing. Moreover, despite Karl's complaints, he never provided any evidence regarding the value of the businesses.

After performing its own analysis and valuation of the companies formed during the marriage, the trial court explicitly explained its main reason for awarding each company to Joan, and the record supports the court's findings. Accepting the trial court's valuations, four of the companies formed during the marriage had negative values or equity because of the debt associated with each. Although Barbizza Bluffs had positive equity, the trial court declined to award any of that equity to Karl because Joan had expended significant funds to maintain Karl's premarital home while it was on the market. We discern no error in the court's property division.

IV

Finally, Karl argues that the trial court abused its discretion by denying his motion to compel the production of documents and granting Joan's motion to quash a discovery subpoena. We review for an abuse of discretion a trial court's decisions regarding the admission of evidence and discovery matters. *Mueller v Brannigan Bros Restaurants & Taverns, LLC*, 323 Mich App

566, 571; 918 NW2d 545 (2018); *Mercy Mt Clemens Corp v Auto Club Ins Ass'n*, 219 Mich App 46, 50; 555 NW2d 871 (1996). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Mueller*, 323 Mich App at 571 (cleaned up).

Trial courts are responsible for issuing scheduling orders, which should include the date upon which discovery concludes. MCR 2.401(B)(2). Generally,

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claims or defenses and proportional to the needs of the case, taking into account all pertinent factors, including whether the burden or expense of the proposed discovery outweighs its likely benefit, the complexity of the case, the importance of the issues at stake in the action, the amount in controversy, and the parties' resources and access to relevant information. [MCR 2.302(B)(1).]

"[A] trial court should also protect the interests of the party opposing discovery so as not to subject that party to excessive, abusive, or irrelevant discovery requests." *Cabrera v Ekema*, 265 Mich App 402, 407; 695 NW2d 78 (2005).

Approximately a month before trial, Karl moved to compel Joan to produce all documents related to the companies formed during the marriage. Karl had requested those documents earlier during discovery, and Joan objected to the broad request. After the trial court denied his motion, Karl issued a subpoena requesting the same documentation. Joan moved to quash the subpoena, and the trial court granted the motion.

The trial court did not abuse its discretion. The record indicates that the trial court denied Karl's motion to compel and quashed the subpoena to Joan because Karl moved to compel the production of documents months after discovery concluded. Karl failed to explain why he waited so long. See *Kemerko Clawson LLC v RXIV, Inc*, 269 Mich App 347, 352; 711 NW2d 801 (2005) (holding that a court does not abuse its discretion by denying motions filed "several weeks after the deadline" and on the eve of trial). Joan responded to Karl's initial request for production of the subject documents in January 2019, before the conclusion of discovery, but Karl did not file his motion to compel until May 2019. Karl issued the subpoena approximately a week before the first day of trial. Moreover, Karl attended a settlement conference and mediation before trial, and the trial was originally supposed to start in May 2019. When the trial court postponed the trial, it gave the parties an additional opportunity to exchange documents. During that time, Karl failed to request the documents that he eventually sought in his belated motion to compel and the subpoena.

The trial court's decision to quash Karl's subpoena based on its overbreadth also was not an abuse of discretion. Instead of specifying the documents necessary to value the companies, Karl repeatedly requested *all documents* regarding the companies formed during the marriage. Notably, in Karl's motion and subpoena, he did not request the documents regarding the valuation of Joandy and Jo and Jo Foods, which made it impossible for the trial court to determine whether Karl's work for Joan's separate property increased the value of those companies. Karl only requested documentation regarding DahlBQ, Spartzza, Jenique, Rockzza II, and Barbizza Bluffs.

These were the marital properties that the trial court did value. Therefore, the trial court did not abuse its discretion by denying Karl's motion to compel and granting Joan's motion to quash.

We affirm.


/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan