*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICIA WHITLOW and SAFEWAY
TRANSPORTATION COMPANY,

UNPUBLISHED
June 23, 2022

Plaintiffs-Appellants,

v

No. 354968
Wayne Circuit Court
LC No. 18-011645-CB

ARTHUR JAY LEWIS, also known as A. J. LEWIS,
also known as JAY LEWIS, also known as J. L.,
doing business as ORIA HOLDINGS, INC., doing
business as CREATIVE CONCEPTS, doing business
as CREATIVE CONCEPTS FINANCIAL
SOLUTIONS, doing business as CREATIVE
CONCEPTS FINANCIAL SOLUTIONS
STRATEGIES, and doing business as FRESH
START FINANCIAL SOLUTIONS, INC., and
TYLER KIELER,

Defendants-Appellees,

and

DION GARNETT, doing business as GNET
HOLDINGS, LLC, and doing business as DINOMI
GROUP,

Defendant.

Before: MARKEY, P.J., and SHAPIRO and PATEL, JJ.

PER CURIAM.

Plaintiffs hired defendant Arthur Lewis as a restructuring agent to assist in restructuring plaintiffs' business affairs. Lewis directed plaintiffs to make payments to a client-trust account belonging to defendant Tyler Kieler, an attorney in California. Plaintiffs contend that, contrary to Lewis's repeated assurances that he performed the various restructuring services that he promised,

-1-

he never actually performed the services, causing plaintiffs' financial demise. Plaintiffs brought this action against Lewis and Kieler, primarily raising theories of fraud. The trial court granted Kieler's motion for summary disposition under MCR 2.116(C)(8) (failure to state a claim for relief). Plaintiffs obtained a default against Lewis and moved for entry of a default judgment. Following a hearing, the trial court determined that plaintiffs had not established any damages relative to Lewis, and accordingly, it declined to enter a judgment for plaintiffs and dismissed the claims against Lewis.

Plaintiffs now appeal as of right. We reverse the order granting Kieler's motion for summary disposition and vacate the order denying plaintiffs' motion for a default judgment against Lewis and remand for further proceedings.

## I. BACKGROUND

Plaintiff Safeway Transportation Company ("Safeway") provided student transportation services through contracts with the Detroit Public Schools ("DPS") and other school districts. Plaintiff Patricia Whitlow was the majority shareholder and chief executive officer of Safeway. When DPS experienced prolonged financial problems, Safeway sought help to remain a viable business. Defendant Dion Garnett referred Whitlow to Lewis, who resides in California. Plaintiffs alleged that after a series of detailed discussions over several days, Lewis proposed that Safeway address its financial problems by (1) obtaining a $1.8 million loan, (2) obtaining less expensive insurance for its fleet of buses, (3) renegotiating leases or deferring lease payments on the buses, (4) negotiating with Safeway's other creditors to defer or reduce monthly installments, and (5) securing installment arrangements on other financial obligations. Plaintiffs further alleged that they made payments to Lewis that included (1) Lewis's fees, (2) prepaid interest on Safeway's loan, (3) reimbursement for paid insurance premiums, (4) payment of certain taxes, and (5) payment of certain agency fees. The payments were made either through wire transfers to Lewis through Kieler's client-trust account, or by authorizing Lewis to receive direct payments from DPS.

According to plaintiffs, Lewis assured them that a loan for Safeway had been approved and that he had reduced Safeway's insurance premiums. The loan presumably was intended to secure funds to satisfy plaintiffs' obligations to the bus leasing company. Despite Lewis's assurances that the money would be sent to Whitlow and that other payments had been made, Whitlow later discovered that payments were never made on Safeway's behalf and the loan funds were never forwarded to plaintiffs. Safeway's insurance on the buses lapsed and when plaintiffs were unable to provide proof of insurance to DPS, Safeway's contract with DPS was suspended and later terminated. Its fleet of buses was also repossessed and Safeway was forced to cease operations.

Plaintiffs filed this action against Lewis and Kieler. Kieler moved for summary disposition under MCR 2.116(C)(8), and the trial court granted the motion. Lewis never answered plaintiffs' complaint and plaintiffs obtained a default against him. Plaintiffs later moved for entry of a default judgment. Plaintiffs alleged that it lost millions of dollars in income because of Lewis's wrongful conduct. Following an evidentiary hearing, the trial court ruled that plaintiffs failed to produce adequate proof of their damages. Therefore, it denied plaintiffs' motion for entry of a default judgment and it dismissed the claims against Lewis. This appeal followed.

## II. SUMMARY DISPOSITION FOR KIELER

Plaintiffs argue that the trial court erred by granting Kieler's motion for summary disposition under MCR 2.116(C)(8). We agree.[1]

A motion under MCR 2.116(C)(8) tests the legal sufficiency of a complaint by the pleadings alone. *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994). All well-pleaded factual allegations are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the allegations. *Peters v Dep't of Corrections*, 215 Mich App 485, 486; 546 NW2d 668 (1996). Summary disposition is appropriate only if the claims are so clearly unenforceable as a matter of law that no factual development could justify recovery. *Patterson*, 447 Mich at 432.

To begin, we acknowledge that both the original complaint and amended complaint were not artfully pleaded. And we affirm the dismissal of the claims alleging legal malpractice, negligence and breach of contract against Kieler.[2] Nonetheless, we conclude that plaintiffs sufficiently stated a claim that Kieler conspired with Lewis to defraud plaintiffs.

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins Co v Columbia Cas Ins Co*, 194 Mich App 300, 313; 486 NW2d 351 (1992). "Liability does not arise from a civil conspiracy alone; rather, it is necessary to prove a separate, actionable tort." *Swain v Morse*, 332 Mich App 510, 530 n 13; 957 NW2d 396 (2020) (quotation marks and citation omitted). The underlying tort in this case is the fraud committed by Lewis against plaintiffs. Plaintiffs do not allege that they had any communications with Kieler, or that Kieler was a party to Lewis's alleged misrepresentations. Thus, plaintiffs also fail to state a fraud claim against Kieler.[3] However, "[a] defendant can also be held liable for a tort committed

---

[1] We review a trial court's decision on a motion for summary disposition de novo. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998).

[2] An essential element of a legal-malpractice claim is the existence of an attorney-client relationship. *Bowden v Gannaway*, 310 Mich App 499, 503; 871 NW2d 893 (2015). Similarly, to establish a negligence claim, a plaintiff must establish a relationship between the defendant and the plaintiff that gives rise to a duty of care. *Bailey v Schaaf*, 494 Mich 595, 604; 835 NW2d 413 (2013); *Nyman v Thomson Reuters Holdings, Inc*, 329 Mich App 539, 552; 942 NW2d 696 (2019). Kieler was named in this lawsuit because he appeared to be acting as Lewis's counsel. Although plaintiffs alleged that Kieler is an attorney in California and failed to meet the standard of care required of attorneys, there were no allegations that Kieler had a relationship with plaintiffs, let alone an attorney-client relationship, or otherwise showing that the Kieler owed any duty to plaintiffs. Accordingly, the trial court did not err by ruling that plaintiffs' complaint failed to state a claim for malpractice or negligence. Further, plaintiffs conceded at the motion hearing that they did not have a breach-of-contract claim against Kieler.

[3] Fraud consists of the following elements:

by some other person under a civil conspiracy theory" if the elements of that claim are proven. *Franks v Franks*, 330 Mich App 69, 113-114; 944 NW2d 388 (2019) (quotation marks and citation omitted).

To begin, plaintiffs sufficiently allege that Kieler took an action to help Lewis accomplish the underlying fraud. According to plaintiffs, Kieler conspired with Lewis to defraud plaintiffs by allowing Lewis to use his Interest on Lawyers' Trust Accounts (IOLTA) account to give Lewis's dealings with plaintiffs an appearance of legitimacy. Plaintiffs further allege that the use of Kieler's IOLTA account induced them to transfer the funds as directed by Lewis. Accordingly, the amended complaint effectively alleges that Kieler acted in furtherance of the alleged conspiracy.

The real question in this case is whether there was "concerted action" between Kieler and Lewis, i.e., whether Kieler knew of and acquiesced in Lewis's fraudulent scheme. See *Rosenberg v Rosenberg Bros Special Account*, 134 Mich App 342, 354; 351 NW2d 563 (1984) ("One who innocently does an act which furthers the tortious purpose of another is not acting in concert with him."). As we have previously explained:

> The agreement, or preconceived plan, to do the unlawful act is the thing which must be proved. Direct proof of agreement is not required, however, nor is it necessary that a formal agreement be proven. It is sufficient if the circumstances, acts and conduct of the parties establish an agreement in fact. Furthermore, conspiracy may be established by circumstantial evidence and may be based on inference. [*Temborius v Slatkin*, 157 Mich App 587, 600; 403 NW2d 821 (1986).]

Here, plaintiffs allege that Kieler knew of Lewis's fraudulent scheme and that he actively participated in it. Plaintiffs further allege that Kieler's knowledge of the fraudulent scheme can be inferred because he knew that he had not performed any legal work with respect to plaintiffs and that Lewis was therefore using the existing attorney-client relationship solely to create the appearance of propriety. In addition, a reasonable inference arises that Kieler gave his IOLTA account information to Lewis to give to plaintiffs.

We conclude that the allegations regarding Kieler's knowledge of the fraudulent scheme and the reasonable inferences from those allegations are sufficient for purposes of a motion under MCR 2.116(C)(8) to satisfy the "concerted action" element of civil conspiracy. See *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 162; 934 NW2d 665 (2019) (holding that the plaintiff sufficiently pleaded the disputed element of causal connection for his retaliation claim by alleging

---

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that [s]he thereby suffered injury. [*Kuebler v Equitable Life Assurance Society of the United States*, 219 Mich App 1, 6; 555 NW2d 496 (1996) (citation omitted).]

the defendant "denied his reappointment in retaliation for the lawsuit he previously filed against defendants under the [Elliott-Larsen Civil Rights Act]."). Construing the complaint in a light most favorable to plaintiffs, *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999), we cannot conclude that the civil conspiracy claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. The amended complaint provides Kieler with adequate notice of the claim being made against him. See *Dalley v Dykema Gossett*, 287 Mich App 296, 305-306; 788 NW2d 679 (2010). Whether there is sufficient evidentiary support for plaintiffs' claim after discovery is completed may be addressed in a motion under MCR 2.116(C)(10). See *El-Khalil*, 504 Mich at 164.

## III. DISCOVERY

Next, plaintiffs argue that the trial court erred by denying their motion to continue Kieler's deposition. We agree.[4]

### A.

A brief description of the procedural history relating to Kieler's deposition is necessary to resolve this issue. Plaintiffs made multiple failed attempts to schedule a date for Kieler's deposition to be taken in California. Eventually, the trial court ruled that it would delay requiring Kieler to attend a deposition until after it decided his motion for summary disposition. After Kieler was granted summary disposition, the court agreed that he should be deposed. The court acknowledged, however, that Kieler's assertion of the attorney-client privilege would be an issue at the deposition, and it entered the following order with respect to documents that plaintiffs had requested in the notice of deposition duces tecum:

> To the extent that Mr. Kieler has any of the documents requested in in the Deposition Duces Tecum notice sent by Plaintiff's counsel, Mr. Kieler shall produce them no later than November 1, 2019. However, to the extent that Mr. Kieler claims that any of the documents are privileged, Mr. Kieler shall produce a privilege log by November 1, 2019.

The order further provided that scheduling of the deposition would occur after November 1, 2019, and that plaintiffs would file a motion if they wished to challenge the applicability of the claimed privilege.

Kieler did not produce any documents or privilege log by the November 1, 2019 deadline. On November 15, 2019, plaintiffs moved for both the production of documents from Kieler and to set a date for Kieler's deposition. In response, Kieler submitted an affidavit attesting that he was not in possession of any of the documents requested by plaintiffs aside from five e-mails from Lewis concerning plaintiffs, all of which Kieler asserted were privileged. No privilege log was included with Kieler's response or affidavit.

---

[4] A trial court's decision to grant or deny discovery is reviewed for an abuse of discretion. *Mercy Mt Clemens Corp v Auto Club Ins Ass'n*, 219 Mich App 46, 50-51; 555 NW2d 871 (1996).

Neither Kieler nor his counsel appeared for the motion hearing. After the trial court indicated that it was going to deny plaintiffs' motion for production of documents because their counsel could not identify the specific documents he was seeking, plaintiffs withdrew the motion so that the trial court could set a time for Kieler's deposition.

Kieler was deposed in California in February 2020. Kieler did not produce any documents requested by the amended re-notice of deposition duces tecum. It was also clear that he made little effort to search for those requested documents. For example, plaintiffs asked Kieler to produce bank records from January 2017 to January 2018 for the involved IOLTA account, but Kieler testified that they were not available because he had closed that account.[5] He only attempted to obtain records from his online banking account. Kieler denied knowing that he could obtain the records in person from a branch location, and therefore he never attempted to do that.

Kieler testified that he had represented Lewis in one lawsuit and three transactional matters. Kieler denied representing Lewis in this matter or in any dealings with plaintiffs, but he did not deny that Lewis may have consulted with him for advice related to this matter or plaintiffs. When asked to elaborate on the context in which Lewis might have mentioned Whitlow's name, Kieler claimed the attorney-client privilege. Kieler admitted that money was wired to his IOLTA account and he eventually learned that it came from Whitlow. He could not recall if it occurred on more than one occasion or the amount of any transfer. Kieler believed that Lewis was responsible for the money put into Kieler's account by Whitlow because he "knew that Mr. Lewis would potentially do stuff like that." Kieler refused to further explain why he believed that Lewis was involved because that information was obtained when confidentially talking to Lewis. Kieler would only tell plaintiffs that Lewis confirmed that the deposits were related to something he was involved with. Lewis told Kieler he could take the money that Lewis owed him from the IOLTA account and give the rest to Lewis, which was what he did. Kieler testified that he had given Lewis the IOLTA account number in the past when working with him previously, and said attorneys often do that with trusted clients to wire money, but he was not sure if Lewis had ever wired him money. He denied that Lewis had previously had money wired to his account without his knowledge or consent.

In May 2020, plaintiffs filed a motion for an order "compelling [Kieler's] good faith participation" in a deposition, in which they recounted Kieler's failure to produce documents and his "frivolous" assertion of the attorney-client privilege throughout the deposition, among other complaints. Plaintiffs also argued that the attorney-client privilege may not be invoked to shield fraudulent conduct. Kieler opposed plaintiffs' motion to compel him to resume his deposition, maintaining that he properly invoked the attorney-client privilege and denied that he was required to produce any documents because the court had denied plaintiffs' motion to compel the production of records.

The trial court adjourned the matter and ordered plaintiffs to file a complete copy of Kieler's deposition. After the deposition transcript was filed, the court issued an order denying

---

[5] According to Kieler, the account was closed at the suggestion of the bank because of suspected fraudulent activity.

plaintiffs' motion, providing no substantive reason for that decision other than "[t]he behavior of both counsel at the deposition was disturbingly unprofessional."

B.

Plaintiffs make numerous challenges to the trial court's discovery orders. We find most compelling the argument that Kieler improperly invoked the attorney-client privilege with respect to communications relating to the fraud committed against plaintiffs.

"The scope of the [attorney-client] privilege is narrow: it attaches only to confidential communications by the client to its advisor that are made for the purpose of obtaining legal advice." *Estate of Nash by Nash v Grand Haven*, 321 Mich App 587, 593; 909 NW2d 862 (2017) (quotation marks and citation omitted). The crime-fraud exception to the attorney-client privilege "is predicated on the recognition that where the attorney-client relationship advances the criminal enterprise or fraud, the reasons supporting the privilege fail." *People v Paasche*, 207 Mich App 698, 705; 525 NW2d 914 (1994). This exception applies to communications relating to ongoing or future wrongdoings. *Id*. at 706. For this exception to apply, it must be established "that there is a reasonable basis to (1) suspect the perpetration or attempted perpetration of a crime or fraud and (2) that the communications were in furtherance thereof." *Id*. at 706, citing *In re John Doe, Inc*, 13 F3d 633, 637 (CA 2, 1994). "This showing must be made without reference to the allegedly privileged material." *Id*., citing MRE 104(a).

In this case, the default entered against Lewis established that a fraud occurred. See *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 578; 321 NW2d 653 (1982), modified on other grounds by *Smith v Khouri*, 481 Mich 519 (2008). The only remaining question is whether there is a reasonable basis to conclude that communications made by Lewis to Kieler were in furtherance of this fraud. We conclude that there is. Any communication made by Lewis concerning plaintiffs or the transfers made to Kieler's IOLTA account did not concern a legitimate purpose. The parties agree that Kieler did not perform any legal work for Lewis related to plaintiffs, and the default against Lewis establishes that he himself did not engage in any financial restructuring work for plaintiffs. Thus, it is reasonable to infer that any communication Lewis made to Kieler concerning plaintiffs and the IOLTA account related to the fraudulent scheme. And it is irrelevant for purposes of the crime-fraud exception whether the attorney knew that the communication was made in furtherance of a fraud. See *United States v Collis*, 128 F3d 313, 321 (CA 6, 1997); *In re Grand Jury Proceedings*, 87 F3d 377, 381 (CA 9, 1996).

Accordingly, Kieler may not claim the attorney-client privilege for communications from Lewis concerning plaintiffs or the IOLTA account. This includes the five e-mails that Lewis sent to Kieler in 2017 regarding plaintiffs that Kieler identified in his affidavit but did not disclose on the basis of privilege. Given our ruling, a second deposition is necessary so that plaintiffs may question Kieler about these topics.

Kieler also claimed the attorney-client privilege for numerous matters that do not appear directly relevant to Lewis's dealings with plaintiffs. For instance, Kieler claimed the attorney-client privilege at times when asked to discuss the details of matters in which he previously represented Kieler. Although we agree with plaintiffs that, generally speaking, Kieler claimed the attorney-client privilege too broadly during his deposition, plaintiffs have not convinced us of the

potential relevancy of Kieler's representation of Lewis in matters that have no connection to plaintiffs. See *Cabrera v Ekema*, 265 Mich App 402, 407; 695 NW2d 78 (2005) ("Parties are permitted to obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the lawsuit . . . ."). Accordingly, we decline to address whether Kieler properly invoked the attorney-client privilege with respect to cases, files and communications not relating to plaintiffs or the IOLTA account. Plaintiffs are not entitled to further discovery on those matters.

Finally, plaintiffs argue that the trial court erred by refusing to order Kieler to produce documents requested by plaintiffs. We agree with plaintiffs that Kieler did not make reasonable efforts to produce documents relating to the now-purportedly closed IOLTA account. On remand, plaintiffs shall be afforded an opportunity to conduct further discovery related to this account. And, as noted, Kieler must produce the e-mails from Lewis that he previously withheld. The other documents that plaintiffs seek relate to Kieler's representation of Lewis prior to his involvement with plaintiffs, which we conclude is not relevant for the reasons discussed. Kieler's second deposition and any additional discovery on remand shall be limited to communications regarding plaintiffs and the IOLTA account that received plaintiffs' transferred funds.

## IV. DEFAULT JUDGMENT

Plaintiffs also argue that the trial court erred by denying their motion for a default judgment. The trial court determined that plaintiffs were not entitled to a default judgment because they failed to adequately prove any damages arising from Lewis's alleged conduct.[6]

Plaintiffs are correct that upon entry of the default against Lewis, his liability was established with respect to all well-pleaded allegations. *Wood*, 413 Mich at 578. But a default is not an admission regarding damages. *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 79; 618 NW2d 66 (2000). Therefore, consistent with MCR 2.603(B)(3)(b),[7] the trial court properly conducted a hearing in January 2020 and allowed Whitlow to testify regarding the damages she believed were caused by Lewis's fraud.

This Court has summarized the general requirements for proving damages:

---

[6] A trial court's decision whether to grant a default judgment is reviewed for an abuse of discretion. *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 383; 808 NW2d 511 (2011). However, a trial court's findings regarding damages are reviewed under the clearly erroneous standard. *Precopio v City of Detroit, Dep't of Transp*, 415 Mich 457, 465-467; 330 NW2d 802 (1982). See also *Marshall Lasser, PC v George*, 252 Mich App 104, 110; 651 NW2d 158 (2002) (review of damages awarded after entry of a default). "Clear error exists where, after a review of the record, the reviewing court is left with a firm and definite conviction that a mistake has been made." *Id*. at 110.

[7] MCR 2.603(B)(3)(b)(ii) provides that a trial court may hold a hearing before entering a default judgment if necessary to determine the amount of damages.

A party asserting a claim has the burden of proving its damages with reasonable certainty. Although damages based on speculation or conjecture are not recoverable, damages are not speculative merely because they cannot be ascertained with mathematical precision. It is sufficient if a reasonable basis for computation exists, although the result be only approximate. [*Berrios v Miles, Inc*, 226 Mich App 470, 478-479; 574 NW2d 677 (1997) (citations omitted).]

In this case, plaintiffs sought recovery of damages for both sums of money that were directly provided to Lewis and for lost profits under a theory that Lewis's conduct was responsible for Safeway's financial collapse and ultimate inability to continue operations. We first conclude that plaintiffs sufficiently established entitlement to some damages for amounts paid to Lewis.

Plaintiffs offered testimony that Lewis was authorized to receive Safeway's payments directly from DPS, which he was supposed to use to satisfy Safeway's various financial obligations. Plaintiffs also produced copies of checks that Lewis claimed he sent to plaintiffs' insurers. Plaintiffs produced a check for $97,026.76 that Lewis claimed to have been sent to Willis of Michigan for Safeway's insurance. Plaintiffs also produced another check for $32,041.32 that Lewis told plaintiffs he sent to Liberty Mutual for insurance. It appears that these were amounts that plaintiffs either paid directly to Lewis or he obtained directly from DPS after being authorized to receive the DPS payments. This evidence factually supported plaintiffs' claim that Lewis had received Safeway funds in the amount of these payments that Lewis claimed to have made for Safeway, but for which Safeway did not receive insurance coverage. Whitlow also testified that she paid Lewis's fees of $6,800 by wiring that amount directly to Kieler's account. Whitlow's testimony was sufficient to support that item. Thus, plaintiffs adequately established their entitlement to a judgment in these amounts.

As for the lost profit damages sought by plaintiffs, we agree with the trial court that plaintiffs did not properly support their requested damages of $13 million. Whitlow's testimony and the financial documents submitted by plaintiffs simply do not support a damages award in that amount. The trial court erred, however, by finding that plaintiffs did not prove that the loss of the DPS contract and future earnings were causally related to the fraud perpetrated by Lewis. "[A] default settles the question of liability as to well-pleaded allegations and precludes the defaulting party from litigating that issue." *Wood*, 413 Mich at 578. Plaintiffs alleged that Lewis made false representations that he was in contact with the leasing company regarding past-due payments, that he had paid the insurance premiums, and that Whitlow should receive the certificates of insurance. Lewis forwarded copies of checks and receipts to plaintiffs, but the quality of the copies was too poor to read them. Following an accident involving one of the buses, plaintiffs learned that Lewis had not obtained new insurance, and DPS suspended Safeway's contract. According to the complaint, the leasing company repossessed Safeway's entire fleet of buses after Lewis failed to obtain a loan, despite his assurances that he had, and DPS ultimately terminated Safeway's contract. Thus, the default entered against Lewis in this uncontested case establishes that Lewis caused Safeway to lose its contract with DPS and that plaintiffs were entitled to some damages for lost profits. Although the trial court properly questioned the competency of plaintiffs' evidence offered in support of their claimed damages, the court erred by requiring proof of causation and denying damages entirely.

Further, plaintiffs' proofs of damages may have been hindered by their inability to depose Kieler until February 2020 and the trial court's failure to substantively address plaintiff's subsequent motion to compel discovery relating, in part, to the IOLTA account. Plaintiffs will be entitled to damages for the amount of any money transferred through that account that was not returned to them.

In sum, we conclude that remand is proper so that the trial court may determine a reasonable amount of damages for payments made to Lewis and lost profits caused by Lewis's fraud. Plaintiff shall be allowed an opportunity to conduct further discovery as detailed in this opinion before the trial court makes that determination.

## V. MOTION TO DISQUALIFY THE TRIAL JUDGE

Plaintiffs lastly argue that the trial court erred when it failed to rule on their motion to disqualify the trial judge. We agree that the court erred by failing to decide this motion before entering the final order. We conclude, however, that plaintiffs' motion did not allege proper grounds for disqualification.

Plaintiffs filed their motion to disqualify the trial judge in June 2020, and sought disqualification on the ground that the trial judge had demonstrated bias in her handling of the case and her June 8, 2020 order denying the motion to continue Kieler's deposition. MCR 2.003(C)(1)(a) provides that a judge is disqualified if he or she "is biased or prejudiced for or against a party or attorney." This Court has explained that

> [a] judge is disqualified when he cannot hear a case impartially. But a party challenging the impartiality of a judge must overcome a heavy presumption of judicial impartiality. In general, the challenger must prove a judge harbors actual bias or prejudice for or against a party or attorney that is both personal and extrajudicial. [*Van Buren Charter Twp v Garter Belt, Inc*, 258 Mich App 594, 598; 673 NW2d 111 (2003) (quotation marks and citations omitted).]

In this case, plaintiffs did not demonstrate that there were grounds to disqualify the trial judge. Their motion was based solely on a claim that the court was biased because of her ruling in the June 8, 2020, order, where she refused to allow further discovery after reviewing Kieler's deposition transcript. Repeated rulings against a party, no matter how erroneous, or vigorously or consistently expressed, are not grounds for disqualification. *Bayati v Bayati*, 264 Mich App 595, 603; 691 NW2d 812 (2004). The court issued the June 8, 2020 order after ordering plaintiffs to produce a complete copy of Kieler's original deposition and then determining that the "behavior of both counsel at the deposition was disturbingly unprofessional." For the reasons stated, we agree with plaintiffs that this ruling was erroneous. But there are no grounds in the record to support a finding that the court was biased for or against any of the parties or their attorneys.[8]

---

[8] We also note that the presiding judge has since retired and that this case has been reassigned to a different judge.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Sima G. Patel